In *re* F. Y., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* F. Y., Respondent-Appellant.)

Third District   No. 79-13

Opinion filed November 29, 1979.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by F. Y., a minor, from an order of the circuit court of Peoria County which revoked his probation and committed him to the Department of Corrections.

On July 12, 1977, a petition and supplemental petition were filed in the circuit court of Peoria County alleging F. Y., a minor, was delinquent in that he had committed the offense of theft and burglary. On July 15, 1977, after a combined adjudicatory and dispositional hearing, F. Y. was found to be delinquent, made a ward of the court and placed on probation with the proviso that a review hearing would be held on October, 7, 1977. No review hearing was held on the scheduled date.

On September 12, 1977, a petition was filed alleging that F. Y. had violated his probation. The following day on motion made by the State the petition was dismissed. A petition again alleging probation violation was filed on October 25, 1977. On November 7, 1977, the allegations of the petition were admitted by F. Y., and he was found to be in violation of his probation. On November 21, 1977, after a dispositional hearing, F. Y. was continued on probation and a review hearing was set for January 18, 1978.

On December 15, 1977, a third petition was filed alleging F. Y. had violated his probation. A hearing was set on the previously scheduled date for a review hearing, being January 18, 1978. On this latter date a fourth petition to revoke probation was filed, so the cause was continued. On January 23, 1978, an adjudicatory hearing was held on the January 18, 1978, petition, and it was found that F. Y. had violated his probation. It was ordered that F. Y. be sent to the Department of Corrections for an evaluation examination. On February 27, 1978, F. Y. was returned to court and after a dispositional hearing was placed under the guardianship of James Johnson of the Juvenile Court Services. He was also continued on probation with the condition that he undergo treatment with the Humane Services Center. A review of the cause was scheduled for April 5, 1978, and on this date F. Y. secured a favorable "review." He received another favorable "review" on July 5, 1978, and another review hearing was scheduled for January 10, 1979.

On August 21, 1978, the fifth petition was filed alleging that F. Y. had

violated his probation. This petition contained five counts and charged the offenses of reckless conduct, contributing to the sexual delinquency of a child, obstructing a police officer, battery and aggravated assault. At an adjudicatory hearing held on September 11, 1978, the reckless-conduct count was dismissed. F. Y. was acquitted on the aggravated assault count but the court found that he had committed the three remaining offenses with which he was charged. On October 2, 1978, a dispositional hearing was held after which the minor F. Y., being 14 years of age, was committed to the Department of Corrections. This appeal ensued.

A more detailed summarization of the procedural and factual aspects relating to and resulting in this appeal will be set forth if and when they become pertinent to the issues raised.

Several issues are raised for determination, but attention is first directed to the contention that the finding of probation violation by F. Y. must be reversed and the order committing him to the Department of Corrections must be vacated because the court had no authority to extend his probation or in the alternative to place him on probation for an indefinite term.

F. Y., the minor respondent, maintains that the facts concerning his placement on probation are subject to two interpretations. First, that he was sentenced to an unauthorized indefinite term of probation with periodic reviews scheduled, or secondly and in the alternative, that he was given a definite term of probation ending October 7, 1977, the date of his first "review," but was then given unauthorized extensions of his term of probation.

The State quarrels not with either of the interpretations advanced by the respondent F. Y. and further concedes that if the law as set forth in the case of *Sneed* (*In re Sneed* (1978), 72 Ill. 2d 326, 381 N.E.2d 272, *aff'd* 48 Ill. App. 3d 364, 363 N.E.2d 37 (1978)) is applicable then either or both interpretations set forth a violation of *Sneed.*

In *Sneed* our supreme court held that juvenile probation must be for a definite period of time and that it cannot be extended without a finding of probation violation during the course of the probationary period.

The case of *Sneed* was our supreme court's first interpretation of the probationary provisions of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—3(1)). The State agrees that *Sneed* sets forth the applicable law as to juvenile probation, but argues that *Sneed* should apply prospectively only. *Sneed* was decided on September 19, 1978, and affirmed an appellate court decision of April 22, 1977. In the instant case the respondent F. Y. was found to be in violation of his probation on September 12, 1978, and was committed to the Department of Corrections on October 2, 1978.

The pivotal question in determining the issue under consideration is

whether *Sneed* is to be given retroactive effect or is to be applied prospectively only.

It is the respondent's contention that the law pronounced in *Sneed* is to be applied retroactively because the decision in that case involved construction of an existing statutory provision and therefore such construction became as much a part of the statute as if written into it originally. In support of this assertion the respondent cites the case of *Ray Schools-Chicago-Inc. v. Cummins* (1957), 12 Ill. 2d 376, 146 N.E.2d 42. The respondent cites a decision of this court in support of his argument that this court is bound to follow the supreme court's construction in *Sneed* of the probation statute in the Juvenile Court Act. He is alluding to the case of *People v. Harris* (1979), 69 Ill. App. 3d 118, 387 N.E.2d 33.

An issue similar to the one posed in the instant case was considered in *Harris*. In *Harris* it was argued by the State that our supreme court's decision in *People v. DuMontelle* (1978), 71 Ill. 2d 157, 374 N.E.2d 205, should be given prospective application only. In *DuMontelle* the supreme court held that an imposition of a fine and costs for persons placed on first offender probation was not authorized by the Cannibas Control Act. This court in *Harris* rejected the State's argument for prospective application only of the *DuMontelle* decision and stated as follows:

"The difference in this case is that in *People v. DuMontelle* the supreme court made no change in a previously established judicial standard which had specified what fines and costs may be assessed. What the court did was to construe, for the first time, what the standard set out by the legislature meant. It established the standard through its construction and did not change an existing one. *Ellis* and *Wills* are not controlling in this circumstance. That circuit courts, in partial reliance upon an opinion of the Attorney General, may have been applying an incorrect construction of the applicable standard does not furnish adequate grounds to restrict *DuMontelle* to prospective application only. Defendants who, prior to *DuMontelle*, had raised issues on review concerning the imposition of costs ought not be denied the benefit of *DuMontelle's* application consequently. We do not find that *DuMontelle* should be given prospective application only." *People v. Harris* (1979), 69 Ill. App. 3d 118, 124-25, 387 N.E.2d 33, 38.

It is as clear in *Sneed* as it was in *Harris* that the reviewing court established a standard through its construction and did not change an existing one. This is the rule heretofore adopted by this court and we find no persuasive reasons to depart from it and hence we do not find that the decision in *Sneed* (*In re Sneed* (1978), 72 Ill. 2d 326, 381 N.E.2d 272) should be given prospective application only.

Even though it has been determined that *Sneed* is to apply

retroactively, the argument of the State against such a determination should be noted. The State relies primarily on the decision in *Stovall v. Denno* (1967), 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203, 87 S. Ct. 1967. *Stovall* outlines the factors to be considered in determining if a judgment that reverses a prior criminal law doctrine should be applied prospectively. These factors are:

"(a) the purpose to be served by the new standards, (b) the extent of the relience by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

Considering these factors, we note that in *Sneed* the supreme court's purpose in construing the probation statute of the Juvenile Court Act as it did was to protect against loss of liberty without due process by holding that probation should be for a definite period of time and that probation may not be extended or revoked without notice and hearing and a finding that the minor has violated a condition of probation. (72 Ill. 2d 326, 333-34, 381 N.E.2d 272, 275.) The State argues that the practical effect of the *Sneed* decision is minimal since the wardship of a minor may continue until he is either 21 or is terminated by order of court. In *Sneed* the court specifically recognized this effect of wardship but nevertheless held that the Juvenile Court Act contemplates that a disposition of probation be for a specific period of time.

We agree with the State that as to the second factor there undoubtedly has been great reliance by law enforcement authorities on the old standards, to-wit, the placing of juveniles on probation for an indefinite period of time. In fact, a reading of *Sneed* indicates that the decision was triggered by this mistaken reliance and resultant denial of due process.

As to the effect on the administration of justice, if there is a retroactive application of new standards as set forth in *Sneed* it can only be concluded that for a period of time there will be an increased burden on law enforcement officials. One can only conjecture as to how brief or how lengthy this period of time may be. There is no reason to believe that the burden will be a horrendous one, but be that as it may, there should be a balancing of the increased burden against the guarantee of due process to a juvenile.

We quarrel not with the standards set forth in *Stovall* but instead accept them and conclude that the retroactive application of *Sneed* to the instant case and like cases will not be in defiance of such standards.

In applying *Sneed* retroactively we are not doing so without precedent. (See *In re Pacheco* (1978), 67 Ill. App. 3d 396, 384 N.E.2d 986.) In *Pacheco* the reviewing court did not concern itself with the retroactive or prospective application of *Sneed* but recognized the decision and

followed it and reversed a juvenile's commitment to the Department of Corrections because the State failed to file a petition for revocation of probation and have a hearing on it during the minor's term of probation.

For the reasons set forth the order of the circuit court of Peoria County committing the respondent F. Y. to the Department of Corrections is reversed. Having reached this result, it is unnecessary to consider the other issues raised by the respondent in this appeal.

Reversed.

ALLOY and BARRY, JJ., concur.