In re J. W., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* J. W., Respondent-Appellant.)
Third District    Nos. 80-173, 80-66, 79-974 cons.

Opinion filed October 15, 1980.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Keefe, State's Attorney, of Rock Island (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This appeal is taken by J. W., the minor respondent, from an order of the Circuit Court of Rock Island County revoking his probation and committing him to the Department of Corrections. J. W. had previously been adjudicated a delinquent and placed on probation as a ward of the court.

In this appeal, he contends the finding that he violated his probation and the order committing him to the Department of Corrections must be vacated, on the premise that the original order placing him on probation was void because it was for an indefinite term. He also asserts that the juvenile court lacked jurisdiction to revoke his probation and commit him to the Department of Corrections since his father was not given proper notice of the revocation hearings.

To clarify the issues presented, and to properly determine the issue of proper notice, the following chronology of events is given:

August 25, 1977—A petition was filed in Rock Island County alleging J. W., then age 13, was delinquent in that he committed a burglary. On the petition J. W.'s mother's address in East Moline, Illinois, was given. Service upon his mother is not contested by J. W. regarding this petition or any subsequent hearings or petitions. A receipt for certified mail indicates that J. W.'s father was apparently served at an address in East St. Louis, Illinois. Pending a hearing, J. W. was placed in the temporary custody of Arrowhead Ranch.

September 22, 1977—An adjudicatory hearing was held at which the trial court determined that the proof sustained the allegations of the August 25, 1977, petition. Both of J. W.'s parents were present. J. W. was allowed to live with his father in East St. Louis, Illinois, pending the dispositional hearing.

November 4, 1977—At a dispositional hearing the court adjudged J. W. a delinquent ward of the court. J. W. was placed on probation and returned to the custody of his father. No indication of the length of the probationary period was given.

April 20, 1978—Notice of a review hearing scheduled for this date was sent to J. W. and to his parents, but the record contains no indication that the hearing was held.

May 18, 1978—A hearing was held on a petition for further disposition at which the court transferred J. W. to the custody of his mother and imposed additional probation restrictions; again, no time limitation is indicated for the probationary period. There is no indication that J. W.'s father was notified of this hearing.

April 23, 1979—A supplemental petition was filed alleging the delinquency of J. W. in that he committed a burglary. Personal service was had upon J. W. and his mother. His father's address is listed as "unknown."

May 3, 1979—An affidavit for service by publication for J. W.'s father was filed stating that the father lives outside the State and that his last known address was St. Louis, Missouri. The petitioner indicated that he had "talked to ex-wife and she hasn't seen him or heard from him in years."

May 11, 1979—Publication was made in the Rock Island Argus.

May 15, 1979—A copy of the publication was mailed to J. W.'s father at an East St. Louis, Missouri, address.

June 5, 1979—Defense counsel filed a motion to dismiss the supplemental petition, citing inadequate service upon J. W.'s father as the basis for the motion.

June 5, 1979—The State also filed a motion to continue, citing the inadequate service upon J. W.'s father.

June 7, 1979—The court continued the cause until June 28, 1979, and ordered that a summons be sent to the father by certified mail.

June 25, 1979—Defense counsel filed a second motion to dismiss, again citing inadequate service upon J. W.'s father.

June 28, 1979—At the hearing the trial judge asked whether defense counsel represented only J. W. or J. W. and his father. Upon the reply of counsel that he represented only J. W. and the court's statement that there appeared to be notice by certified mail, the motion of defense counsel to dismiss was denied. J. W. was found guilty of burglary and temporarily placed in the custody of Arrowhead Ranch. The trial judge did not indicate that notice by certified mail had been made upon J. W.'s father,

although he did ascertain that such notice was received by defense counsel.

July 19, 1979—At a dispositional hearing J. W. was placed with U.D.I.S. to participate in the Underway Wilderness Stress Program for six months with the placement to be reviewed after six months. No indication is given that J. W.'s father was notified of this hearing.

September 21, 1979—A petition for further disposition was filed alleging that J. W. committed the offense of attempt burglary. The assistant state's attorney certified that notice was served on the father by mail.

September 27, 1979—Defense counsel moved to dismiss the petition based on inadequate service to J. W.'s father.

October 12, 1979—A dispositional hearing was held. J. W. and his mother received notice of the hearing. The assistant state's attorney outlined the attempts made to serve the father: a summons was sent to the sheriff of St. Clair County by certified mail; the sheriff attempted to personally serve the father at his last known address, but the father apparently had moved. A person with the same name was located, but it was discovered that he was not J. W.'s father. The trial court determined that the lack of notice to J. W.'s father did not deprive the court of jurisdiction. J. W. was found guilty of attempt murder and was placed through U.D.I.S. at the Peoria Youth Farm for a period of 3½ months. A notice of appeal was filed following this disposition.

November 28, 1979—J. W. was removed from the Peoria Youth Farm.

December 31, 1979—Petition for further disposition pursuant to the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 705—2(3)) was filed. The petition alleged that J. W. was removed from the Youth Farm due to constant behavior problems. J. W.'s father was not listed on the petition, nor was he certified as having received notice by the assistant state's attorney.

January 3, 1980—Defense counsel filed a motion to dismiss alleging that J. W.'s father had not been served with notice.

January 10, 1980—Another petition for further disposition was filed, alleging the same facts as the December 31, 1979, petition, but this time J. W.'s father was listed on the petition and an attempt was made to serve him by certified mail.

January 21, 1980—Hearing held on the petition for disposition. After the prosecutor stated that notice had been sent to J. W.'s father by certified mail on January 10, the court denied defense counsel's motion to dismiss. After hearing testimony, the trial judge stated that every alternative short of a long-term commitment to the Department of Corrections had been tried with J. W. The judge then committed J. W. to the Department of Corrections in St. Charles. A notice of appeal was filed with respect to this disposition.

January 23, 1980—A petition to revoke J. W.'s probation was filed. It alleged that J. W. had been adjudicated a delinquent ward of the court and placed on probation on November 4, 1977. It further alleged that J. W. violated the terms of his probation by committing the offense of resisting a peace officer on or about January 21, 1980. The incident which formed the basis for the charge occurred as J. W. was being taken from the courtroom following the January 21, 1980, hearing. The assistant state's attorney certified that he mailed notice of the projected January 29, 1980, hearing to J. W.'s father on January 23, 1980.

January 24, 1980—Defense counsel filed a motion to dismiss the January 23, 1980, petition, alleging that since J. W.'s probation had been effectively revoked on January 21, the January 23 petition was moot.

January 29, 1980—A hearing was held on the petition to revoke probation. The trial court, upon motion by the prosecutor, vacated its order of January 21, 1980, on the basis that it was improper to have committed J. W. to the Department of Corrections without actually revoking his probation. Arguments were heard on whether adequate attempts had been made to serve notice of the hearing upon J. W.'s father. Upon learning that notice had been sent by regular mail, the judge ruled that proper attempted service had been made and there was jurisdiction over the matter. After hearing evidence relating to the scuffle which occurred between J. W. and a police officer at the conclusion of the January 21 hearing, the

trial court stated that it appeared J. W. had resisted the police officer. The court then entered an order revoking the minor's probation.

January 30, 1980—A dispositional hearing was held during which the trial judge concluded that the only alternative available to him was to order that J. W. be committed to the Department of Corrections. A notice of appeal was filed.

The three appeals from the October 12, 1979, January 21, 1980, and the January 29 and 30, 1980, hearings have been consolidated. As we have noted, two issues are raised in this consolidated appeal: (1) whether the judgment of the court revoking J. W.'s probation and committing him to the Department of Corrections should be reversed on the basis that the original order placing J. W. on probation was void because it was for an indefinite term, and (2) whether the juvenile court lacked jurisdiction because J. W.'s father was not notified of the revocation proceedings.

We agree that the juvenile court lacked jurisdiction to revoke J. W.'s probation and commit him to the Department of Corrections. This lack of jurisdiction stems from insufficient attempts to comply with statutorily and constitutionally mandated notice requirements. *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.

In the landmark case of *In re Gault*, the United States Supreme Court held that, in juvenile proceedings, due process requires that the juvenile and his parents be notified in writing of the specific charges or allegations to be considered at a hearing. Such notice is to be given at the earliest practicable time and sufficiently in advance of the hearing to permit preparation. 387 U.S. 1, 33, 18 L. Ed. 2d 527, 549, 87 S. Ct. 1428, 1446.

Consistent with this constitutional mandate, the Illinois Juvenile Court Act requires that the parents of a juvenile against whom a petition of delinquency is filed be named as respondents in the petition and also that they be issued a summons by the clerk of the court requiring them to appear and answer the petition on the date set for the adjudicatory hearing. (Ill. Rev. Stat. 1979, ch. 37, pars. 704—1(2), 704—3(3).) The Act provides that if personal service cannot be made, service should be by certified mail, and if the latter method is unavailable, then service may be by publication, with a copy sent to the individual's last known address. (Ill. Rev. Stat. 1979, ch. 37, pars. 704—4(1), 704—4(2), (3).) Section 5—3(3)(c) of the Act (Ill. Rev. Stat. 1979, ch. 37, par. 705—3(3)(c)) provides that when a petition is filed charging a violation of probation, the court shall notify the persons named in the petition under section 4—1. In the case at bar the record indicates that notice of the revocation proceedings was merely sent to J. W.'s father by regular mail six days before the

hearing. Apparently no attempts were made to serve the father personally, by certified mail or by publication.

The State contends that J. W. has no standing to raise the lack of service upon his father, apparently because he was not in the custody and control of his father at the time of the revocation hearing, and that no service by publication or otherwise was necessary asserting that the record clearly shows that the father was out of State continuously from a period before the probation revocation proceedings, citing section 4—4(2) of the Juvenile Court Act. We do not agree with these contentions. In the case of *In re C. G.* (1979), 69 Ill. App. 3d 56, 387 N.E.2d 4, this court determined that a parent's custodial interest is irrelevant to the notice requirements mandated by the Juvenile Court Act. In response to the State's second contention, we note that a careful review of the record does not clearly indicate that J. W.'s father had moved from Illinois as the State argues. Furthermore, it is undisputed that no attempt was made to comply with the dictates of the Juvenile Court Act regarding notice.

Because notice to a minor's parents is jurisdictional (*People ex rel. McEntee v. Lynch* (1906), 223 Ill. 346, 79 N.E. 70; *In re C. G.* (1979), 69 Ill. App. 3d 56, 387 N.E.2d 4; *In re T. B.* (1978), 65 Ill. App. 3d 903, 382 N.E.2d 1292), we find that the State's failure to exercise due diligence in complying with the notice requirements of the Juvenile Court Act in the instant case has resulted in a lack of jurisdiction by the court. For that reason the order entered by the court committing J. W. to the Department of Corrections is void. See *In re C. G.* (1979), 69 Ill. App. 3d 56, 387 N.E.2d 4; *In re T. B.* (1978), 65 Ill. App. 3d 903, 382 N.E.2d 1292.

Because we find that the court lacked jurisdiction during the probation revocation hearings and thus any orders it issued are void, we need not decide the second issue raised in this appeal; specifically, whether the original order placing J. W. on probation was void because it was for an indefinite term. We do note, however, that a difference of opinion has arisen in the appellate courts regarding the Illinois Supreme Court's interpretation of the applicable provisions of the Juvenile Court Act in the case of *In re Sneed* (1978), 72 Ill. 2d 326, 381 N.E.2d 272. (See *In re S. C. G.* (1980), 84 Ill. App. 3d 471, 406 N.E.2d 590; *In re R. H.* (1980), 82 Ill. App. 3d 578, 402 N.E.2d 910, leave to appeal filed (No. 53344); *In re T. E.* (1980), 81 Ill. App. 3d 630, 401 N.E.2d 1107, leave to appeal filed (No. 53329); and *In re F. Y.* (1979), 78 Ill. App. 3d 712, 397 N.E.2d 902.) In some of these cases, the original indefinite term probation order was considered void while in others the order is considered merely voidable. Perhaps the conflict will be resolved in one of the two cases cited above in which leave to appeal has been filed with the Illinois Supreme Court.

Because we determine that the court lacked jurisdiction, the order

revoking J. W.'s probation and committing him to the Department of Corrections is reversed.

Reversed.

STOUDER and BARRY, JJ., concur.