107 Ill. App.3d 482 (1982)
437 N.E.2d 888
In re D.J.B., a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
D.J.B., Respondent-Appellant.)
No. 80-507.
Illinois Appellate Court  Fifth District.
Opinion filed June 21, 1982.
*483 John H. Reid and Patrick M. Carmody, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.
Don W. Weber, State's Attorney, of Edwardsville (Martin N. Ashley and Frank J. Bieszczat, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
JUSTICE WELCH delivered the opinion of the court:
Respondent, D.J.B. was adjudged a delinquent and a ward of the Circuit Court of Madison County. Following a dispositional hearing he was committed to the Department of Corrections, Juvenile Division.
The record reflects that in an unrelated hearing in March 1980, the respondent had been found to be delinquent based upon his involvement in arson. He was declared a ward of the court and placed on probation for one year. In May of 1980, a petition was filed charging respondent with burglary and criminal damage to property under $150. In addition, a petition to revoke minor's probation based on those charges was filed.
An adjudicatory hearing was held on June 13, 1980. The respondent was represented by the public defender's office. Neither parent appeared at the hearing. Respondent, pursuant to negotiations, admitted to the criminal damage charges of both petitions. In exchange, the burglary charges in the petitions were dismissed. After being fully admonished and advised of his rights and possible dispositions the respondent admitted to the offenses in open court and affirmed the negotiations. The court then found respondent to be delinquent and a ward of the court. At a dispositional hearing held July 3, 1980, respondent was ordered placed in the custody of the Department of Corrections, Juvenile Division.
Respondent contends on appeal, although he did not do so at trial, that the juvenile court lacked jurisdiction to impose final judgment and that any order entered is void. The first basis for respondent's contention is that service of his parents by publication occurred only eight days prior to the adjudicatory hearing in contravention of the 10-day rule of section 4-4(3) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 704-4(3)). It appears that this argument poses a question of first impression in this court.
The current petition listed the address of respondent's father as "ADDRESS UNKNOWN, Indianapolis" and listed the address of respondent's mother as "ADDRESS UNKNOWN." Service by publication of respondent's parents was placed with the Granite City Press-Record on June 2, 1980, and notice of the June 13, 1980, adjudicatory hearing was *484 published on June 5, 1980. In the previous hearings of this respondent, resulting in probation, service was by publication also, the parents' addresses being unknown.
Respondent relies on In re R.P. (1981), 97 Ill. App.3d 889, 423 N.E.2d 920, for the contention that the court lacked jurisdiction based on the State's failure to comply with the 10-day notice rule. Reliance on this case by respondent is misplaced. In R.P. the issue was whether in personam jurisdiction for an adjudication of a second supplemental petition continued from the original petition and first supplemental petition. Jurisdiction had been acquired over the minor's biological father by personal service for the purpose of an adjudicatory hearing on the original and first supplemental petitions.
R.P. addresses only the issue of when service by publication may be used. In that case, the court felt that notice by publication of the second supplemental petition was inadequate, since the father had received personal service of the original and first supplemental petitions. R.P. states that when a supplemental petition alleges a different transaction from that in the original petition, notice to the parents "must be just as adequate as * * * the notice required for the original petition." (97 Ill. App.3d 889, 893, 423 N.E.2d 920, 923.) The decision in that case provides us with no guidance concerning the ability of the juvenile court to proceed within 10 days following service of parents by publication.
The Juvenile Court Act allows for service by publication when personal service or notice by certified mail cannot be obtained. (Ill. Rev. Stat. 1979, ch. 37, par. 704-4(2).) The Act further states that "[t]he court may not proceed with the adjudicatory hearing until 10 days after publication." (Ill. Rev. Stat. 1979, ch. 37, par. 704-4(3).) Respondent interprets this language to be mandatory.
 1, 2 Words such as "shall" or "must" often indicate mandatory language, although, in certain circumstances, those terms can be construed as directory rather than mandatory. (Andrews v. Foxworthy (1978), 71 Ill.2d 13, 373 N.E.2d 1332). In section 4-4(1), such language is employed, in that the court "shall not proceed with the adjudicatory hearing until 5 days" after service upon the parents by certified mail. (Ill. Rev. Stat. 1979, ch. 37, par. 704-4(1).) By contrast, section 4-4(3) states that the court "may not" hold an adjudicatory hearing until 10 days after publication. To us, the difference between the language in section 4-4(1) and section 4-4(3) indicates that the time period in the latter section was intended only to be directory, and, even if mandatory, not jurisdictional. But, the wording of the statute is not the sole basis for our conclusion.
As our supreme court stated in In re Armour (1974), 59 Ill.2d 102, 319 N.E.2d 496, we must consider the entire statute, its nature, objects and the possible consequences from construing it in a particular manner. It is well *485 established that the Juvenile Court Act was enacted as a corrective, rather than a penal measure. (Ill. Rev. Stat. 1979, ch. 37, par. 701-2(1).) Society is interested in the proceedings for its own sake as well as for the minor's individual welfare in guiding and rehabilitating. These interests cannot always be served by mechanical adherence to rote or formula. In re Armour (1974), 59 Ill.2d 102, 104, 319 N.E.2d 496, 498.
Cases which have found the time limitations of the Juvenile Court Act to be mandatory have involved situations where the juvenile was being detained. (See People ex rel. Davis v. Vazquez (1982), 92 Ill.2d 132, 145, and cases cited therein). Courts in those cases found that even if mandatory compliance was required, failure to do so would not deprive the court of jurisdiction. The remedy for the juvenile was to be released from detention rather than discharged.
We realize that the cases referred to in the preceding paragraph have construed maximum time limits in the context of the minor's right to a swift adjudication. But we find the approach taken in those cases to be persuasive in interpreting a minimum time limit here. In the present case, the minor and society are both interested in a speedy determination of the matters alleged in the petition, while the parents' interest lies in the receipt of adequate notice. We do not believe that the drafters of the Juvenile Court Act intended to reconcile these competing interests by mandating a 10-day waiting period in all cases. Instead, the use of the directive language "may not" suggests that these interests should be weighed to determine whether the Act has been complied with, as they were in the maximum time limit cases. In re Armour.
The predispositional evaluations in this case show that D.J.B. was placed in the Catholic Children's Home in Alton, Illinois, by his father in 1972. He returned to his father in 1974, but his father returned D.J.B. along with two sisters to the Children's Home in 1975, where he remained through the adjudicatory hearings. D.J.B.'s mother was not shown to have had any contact with him during this time, and, as of March 1980, D.J.B. last saw his father a year and a half previously, and last received any correspondence from him in mid 1979. When probation personnel finally contacted the father in June 1980, the father stated that he did not want D.J.B. to reside with him because his current wife was under a doctor's care. The probation officer
"suggested to [the father] that perhaps [D.J.B.] needs him in order to get his life in order. [The father's] response was that it would not make any difference because [D.J.B.] has always been in some type of trouble (no further elaboration on this subject from [the father]). [The father] also stated that the only thing that will help [D.J.B.] is for him to find out that he cannot do these things [referring to delinquent behavior]."
*486 In this case, the interests of the absent mother and indifferent father, neither of whom had custody of the minor, are at best speculative. (See In re J.W. (1981), 87 Ill.2d 56, 429 N.E.2d 501.) Moreover, the minor was represented by counsel who protected his rights at all stages of the proceedings. (In re Vaught (1981), 103 Ill. App.3d 802, 431 N.E.2d 1231.) Under the circumstances, the trial court acted in accordance with the intent of the Juvenile Court Act when it held an adjudicatory hearing eight days after publication.
Respondent next contends that the court lacked jurisdiction because the State failed to exercise due diligence in notifying respondent's parents of the pending hearing. We cannot agree.
In his brief, the minor relies on In re T.B. (1978), 65 Ill. App.3d 903, 382 N.E.2d 1292. There, a summons pertaining to the minor's forthcoming adjudicatory hearing was sent via certified mail to the mother's last known address in Peru, Illinois. It was returned with a postal stamp marked "MOVED. Left No Address." Notice to the mother of the hearing was then published. The record did not indicate whether the father received notice of the hearing or whether he appeared at it. At the dispositional hearing, it was learned that the minor's mother had moved to Arizona. The minor was aware of that fact, and had mentioned it to the police before the summons was sent to his mother's Peru address. Also, at the dispositional hearing, the father was described as a long-time alcoholic who had little interest in his family.
The appellate court held that the State failed to exercise due diligence in ascertaining the mother's new address. It was suggested that the State should have inquired among the mother's former neighbors or of the father, if he was available, to locate her. Significantly, the T.B. court did not fault the State's efforts in notifying the father, even though it was not apparent of record that he received any sort of notice of the proceedings.
In this case as well, evidence discovered after the adjudication of delinquency proved that further diligence in locating the precise address of the father would have been futile, because he did not wish additional involvement in the matter. Moreover, it appears that D.J.B. had no contact with his mother in approximately eight years, and nothing in the record indicates that he had any idea of her whereabouts, as did T.B.
It is unclear from the record in this case what efforts were made to attempt to locate the current addresses of the parents. The mother's address has consistently been referred to as "Unknown." The father was described as a resident of Pittsboro, Indiana in the March and June, 1980, predispositional evaluations, and as a resident of Indianapolis in the May 1980 petitions. The minor suggests that additional inquiries may have yielded a precise street address to which certified mail could have been sent. However, since it is not obvious from the record what inquiries were *487 made, it is difficult to say what those "additional inquiries" would have consisted of.
 3 Most importantly, though, is that, given the parents' disinterest in the minor, we cannot hold that the failure to make further inquiry so as to enable service by certified mail deprived the court of jurisdiction to adjudicate the status of the minor. The mother's lengthy absence rendered service by publication appropriate (In re Vaught; In re J.W.), and greater diligence in locating the father's street address would have indeed been a "useless formality." (In re J.W. (1981), 87 Ill.2d 56, 62, 429 N.E.2d 501, 504.) In re T.B. does not hold otherwise.
In our opinion, neither the trial court's adjudication of delinquency within 10 days of notice by publication nor the State's failure to pursue whatever further measures might have yielded street addresses for the parents were jurisdictional defects under the facts of this case. Consequently, we affirm the decision of the Circuit Court of Madison County.
Affirmed.
KARNS, P.J., and JONES, J., concur.