*In re* S.W.C., a Minor.—(The People of the State of Illinois, Petitioner-Appellee, *v.* S.W.C., Respondent-Appellant.)

Fourth District No. 4—82—0353

Opinion filed December 2, 1982.

Daniel D. Yuhas and Gary S. Rapaport, both of State Appellate Defender's Office, of Springfield, for appellant.

Anthony B. Cameron, State's Attorney, of Quincy (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:

In a juvenile supervision revocation proceeding, is proper notice required of anyone other than the custodial parent?

No—certainly in this context.

We affirm.

S.W.C. was originally placed on supervision after his admission to theft as alleged in a petition for adjudication of wardship. S.W.C.'s mother, with whom he resided, was properly notified of the petition and the hearing upon it. His father, whose address was listed as unknown on the petition, was served by publication only and did not appear.

Before accepting his admission, the court informed S.W.C. of his right to a hearing, to confront witnesses against him, and to have the State prove his guilt beyond a reasonable doubt. The court also ascertained that S.W.C. understood his rights and that he was waiving them by admitting the allegations in the petition.

S.W.C. was further informed that if he violated the conditions of

the order of supervision, a finding could be entered on his admission, he could be declared a ward of the court, and a formal disposition could be entered sentencing him to probation, placing him in a youth home or with someone other than his mother, or committing him to the Department of Corrections. S.W.C. indicated his understanding; the court accepted his admission and placed him on supervision.

The State subsequently sought to revoke S.W.C.'s supervision. S.W.C.'s mother was again properly notified and did appear. At the initial hearing on the petition, the court inquired as to how best to notify S.W.C.'s father. The transcript reflects that although the minor informed the court of his father's address, notice was nevertheless furnished by publication only.

S.W.C. admitted the burglary set forth in the petition to revoke, pursuant to an agreement with the State.

After inquiring whether the agreement was acceptable to S.W.C., the trial judge again informed S.W.C. of his rights and the consequences of his admission. Finding that S.W.C. understood his admonitions, the judge accepted S.W.C.'s admissions and revoked his supervision. Following a dispositional hearing, S.W.C. was committed to the Department of Corrections. His motion to withdraw his admission and vacate the order of commitment was denied.

In this court, S.W.C. contends that because his father was not given proper notice, the trial court lacked jurisdiction to enter any order against him and that the trial court improperly failed to require a factual basis before accepting his admission.

I

S.W.C. is correct that due process does require notice to a juvenile's parents in a delinquency proceeding. (*In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) Further, notice by publication is inadequate unless the State has exercised due diligence in finding the parents' address, and sends a copy of notice to the last known address of the parent. *In re T.B.* (1978), 65 Ill. App. 3d 903, 382 N.E.2d 1292.

While the State in this case exercised less than due diligence in serving S.W.C.'s father with notice, this deficiency did not deprive the trial court of jurisdiction to adjudicate S.W.C. delinquent, revoke his supervision, or require reversal of those orders. *In re J.W.* (1981), 87 Ill. 2d 56, 429 N.E.2d 501.

*Gault* does not compel a contrary result. There, the minor was taken into custody and neither of his parents was given formal notice of any hearing or the charges against their son until after they had

filed a *habeas corpus* petition on his behalf. Here, the minor's mother, with whom he resided, was given notice and did appear. *Gault* required notice, but not specifically to *both* parents.

The supreme court in *J.W.* left open the possibility that where a parent has a more significant relationship with a minor child than J.W. had with his father, a more concerted effort to furnish notice might be required. The minor in *J.W.* was illegitimate and did not know *who* his father was. On such facts, even notice by publication was not required.

■ By way of contrast, S.W.C. knew who his father was and there is some indication in the record that he knew *where* he lived. This is certainly indicative of a more significant relationship than existed in *J.W.* However, S.W.C. apparently communicated infrequently with his father and was not sure whether his father knew about the delinquency petitions or not. Thus, the significance of S.W.C.'s relationship cannot have been very great, and service by publication was sufficient.

Two cases decided since *J.W.* dealing with the question of when notice is required to a noncustodial parent support our decision here. *In re Stokes* (1982), 108 Ill. App. 3d 637, 439 N.E.2d 514, found that an order committing a minor to the Department of Corrections was not void because the minor's father—whose address was unknown—was not served by publication. The court inferred from the fact that the minor did not know his father's address that there was little contact between the two. As the custodial parent was served and did appear, the father was not an indispensible party and the order could be entered in his absence.

In *In re Vaught* (1981), 103 Ill. App. 3d 802, 431 N.E.2d 1231, the father's identity was known and his whereabouts were indicated as "Bremen, KY." The court read *J.W.* as indicating that failure to notify the father in no way affected the court's jurisdiction. Further, it only required reversal of the minor's commitment to the Department of Corrections if the father was an indispensible party. As the minor was apparently in the custody of his mother, who was notified, and since the record showed no right of the father which was affected by the adjudication, the father was not an indispensible party.

■ Thus, notice to the custodial parent is what is crucial. That is all that is required under section 4—4(2) of the Juvenile Court Act. (Ill. Rev. Stat. 1981, ch. 37, par. 704—4(2).) Unless a minor shows some significant relationship with a noncustodial parent that is affected by the adjudication, he cannot stand silent at a hearing where he is represented by counsel and where his custodial parent is present

and then later be heard to complain about lack of notice.

The noncustodial parent should be served personally or by mail whenever possible and the court should endeavor to ascertain the full extent of the minor's relationship with him or her, but failure to do so is not fatal on the facts of this case.

## II

 S.W.C.'s second argument that a factual basis must be found was raised and rejected in *In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, *cert. denied* (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734. In *Beasley,* the court held that Supreme Court Rule 402 (87 Ill. 2d R. 402) is inapplicable in juvenile proceedings and that a minor's admissions may be accepted without requiring a factual basis. It also held that the Juvenile Court Act and due process require only that a minor know and understand his right against self-incrimination, his right to confront witnesses against him, his right to trial, and that by his admissions he waives these rights and subjects himself to any disposition authorized by the Juvenile Court Act before the minor's admission may be accepted by the court.

While it is clear that no factual basis to the theft or the burglary was before the trial judge when he accepted S.W.C.'s admissions, the record here affirmatively demonstrates S.W.C.'s knowledge and understanding of his rights as well as the consequences of his admissions. S.W.C. was represented by counsel. When the trial judge informed him of his rights, he represented that he understood them and was waiving them. *Beasley* does not require more, and we decline to go beyond its requirements.

Contrary to S.W.C.'s assertion, *McCarthy v. United States* (1969), 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166, does not hold that a factual basis is constitutionally required. *McCarthy* involved a construction of Rule 11 of the Federal Rules of Criminal Procedure, and not any constitutional question. Thus, *McCarthy* casts no shadow of doubt on *Beasley*.

Affirmed.

WEBBER, P.J., and GREEN, J., concur.