*In re* J.P.J., a Minor (The People of the State of Illinois, Petitioner-Appellee,
*v.* J.P.J., Respondent-Appellant).

Second District   No. 83—424

Opinion filed March 13, 1984.

G. Joseph Weller and John R. Wimmer, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Respondent, J.P.J., a minor, was adjudicated delinquent by the circuit court of Du Page County and committed to the Department of Corrections, Juvenile Division. On appeal, respondent contends that (1) the finding of delinquency and the order of commitment are void because (a) the State failed to make proper inquiry as to the whereabouts of respondent's father, and (b) the State failed to give proper notice to respondent's father, and (2) the trial court's exclusion of evidence relevant to the credibility and weight to be given the respondent's confession denied respondent a fair adjudicatory hearing.

On February 7, 1983, the respondent was arrested and charged with two counts of theft over $300 (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(a)(1)) and one count of residential burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—3). A delinquency petition was filed on February 14, 1983, which named the minor, J.P.J., and the minor's parents as respondents. The minor's address was the same as his mother's, but the petition listed the address of respondent's father as "address unavailable." Summonses were subsequently filed on February 23, 1983. The return indicates that service was effected on the minor and his mother, but not on respondent's father. The record indicates that the minor, his mother, and his appointed counsel were present at all of the proceedings. The record does not disclose further attempts to notify respondent's father either by personal service, certified mail or notification by publication prior to the adjudicatory hearing.

Prior to the commencement of the adjudicatory hearing, the defense filed a motion to suppress respondent's statements to police alleging, *inter alia*, that respondent's confession was not voluntarily given because of alleged promises of leniency by police in exchange for respondent's confession. After a hearing, the motion was denied.

The State's evidence tended to establish that on February 7, 1983, at about 1 p.m., the residence of Barbara Mucho, located in Elmhurst, was burglarized. Officer Gary Fuller, a detective with the Elmhurst police department stated he questioned the minor the next day at the police station about the burglaries at the Mucho home and at another

home. The minor denied any involvement in the burglaries. However, when confronted with the statement of one of the minor's acquaintances, the respondent told Fuller that on February 7 he and Mitch Cunningham went to see a person the minor knew as "Choke." The minor and Cunningham went to what they thought was Choke's home and were told by someone there that he had moved. The minor then took a key from the drawer on the back porch. The two went to Jim McManus' house. Around 1 p.m. that afternoon, the minor said he and McManus and Cunningham went back to "Choke's house." The minor gave McManus the key and he unlocked the door and went in for the purpose of getting some beer. When McManus came out he was carrying a .25-caliber gun, a gold watch and chain, and a case of beer. McManus kept these items and the three went to the park where they drank the beer. On cross-examination, respondent's counsel attempted to ask Fuller if he had made any offer of leniency in exchange for respondent's statement. The prosecutor objected on the basis that this matter had already been litigated at the suppression hearing. The objection was sustained. McManus next testified for the State that it was the minor who entered the residence and took the items in question. The respondent did not testify at trial. Following the close of all the evidence, the court acquitted the respondent of one count of theft over $300 and found the minor was delinquent on the other charges.

A dispositional hearing was held on May 5, 1983. It was learned from the probation officer's report, dated May 3, 1983, that the minor's parents were divorced in July of 1981 and the respondent had been living with his mother and two of his siblings in Elmhurst. The report further disclosed that respondent's father had been living in Joliet with one of the minor's siblings and two years earlier had lived in a home in Lovelton, Indiana. Respondent's father was listed as being employed as a truck driver for the Coleman Movers Company in Summit, Indiana, for the past 3½ years. The report also indicated that the father last appeared in court with the minor in September of 1981 on a previous petition involving the minor. Further, the report states that no child support had been received in over a year. It should be noted that this report indicates that parts of the report were taken from two earlier dispositional reports dated July 17 and November 25 of 1980, although it does not state which parts of the report were based on these earlier findings. Following the dispositional hearing, the respondent was found to be delinquent and was committed to the Department of Corrections and he appealed.

FATHER NOT GIVEN
NOTICE OF THE PROCEEDINGS

Respondent first contends that the adjudication of delinquency should be reversed and remanded for a new adjudicatory hearing because respondent's father was not given proper notice of the proceedings nor did the State make proper inquiry to ascertain the father's whereabouts. The record establishes that the minor and his mother were personally served notice of the hearing and were present during all of the proceedings, accompanied by counsel. A return of summons lists the respondent's father as being not served. There is no evidence in the record that notice by certified mail or notice by publication was ever attempted by the State. The father did not appear in any of these proceedings. Respondent essentially argues that as the court lacked *in personam* jurisdiction to make a finding of delinquency and order commitment where his father was without notice of the proceedings, the court's judgment is rendered void.

■ Due process requires notice to the minor and the minor's parents in a delinquency proceeding. (*In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) A defendant or unnamed party who has not been given adequate notice or an opportunity to otherwise appear but whose rights have been directly adjudicated may directly or collaterally attack the judgment as void for failure to obtain jurisdiction over his person. (*In re Vaught* (1981), 103 Ill. App. 3d 802, 804, 431 N.E.2d 1231, 1233; *Clinton Co. v. Eggleston* (1979), 78 Ill. App. 3d 552, 397 N.E.2d 183.) However, the failure to join such an indispensable party does not deprive the court of jurisdiction over the parties properly before it. (*In re J.W.* (1981), 87 Ill. 2d 56, 59; *In re Vaught* (1981), 103 Ill. App. 3d 802, 804, 431 N.E.2d 1231, 1233.) Where failure to join an indispensable party is raised on appeal, the reviewing court will vacate the judgment and order that the indispensable party be joined on the basis of fairness to the nonjoined party. *In re Vaught* (1981), 103 Ill. App. 3d 802, 804, 431 N.E.2d 1231, 1233.

The Illinois Supreme Court recently addressed the issue of whether a noncustodial parent was an indispensable party to the delinquency proceeding and whether it was proper to hold an adjudicatory hearing without serving notice on a noncustodial parent. (*In re J.W.* (1981), 87 Ill. 2d 56.) The minor in *J.W.* was illegitimate and did not know who his father was. The minor and his mother and appointed counsel were present at all of the delinquency proceedings. The father, who was unknown to the minor, was not given notice either by personal service or by publication. No objection was made before or during the adjudicatory hearing to the lack of service on the

father. In addressing the issue of whether it was proper to conduct the hearing without an attempt at notice by publication on the father, the court first noted that the minor had the assistance of his mother and legal counsel and, in the absence of any suggestion that the father's presence could have aided his defense, the adjudicatory hearing was fair and did not deprive the minor of due process. Also, the adequate notice to the minor and his mother and legal counsel did not deprive the court of *in personam* jurisdiction over the minor. The failure to publish notice to the noncustodial and absent father, the court concluded, did not deprive the father of due process where he was not an indispensable party to the proceedings. The court first noted that the minor's commitment did not deprive the father of any substantial rights since the child was not in the father's custody. Also, the father's speculative right to be made a party was outweighed by the countervailing interests of the child's right and the State's obligation to conduct a speedy adjudicatory hearing. (*In re J.W.* (1981), 87 Ill. 2d 56, 59-60.) Based on these considerations, the court concluded that it was proper to go forward with the delinquency proceedings in his absence. However, the court recognized the possibility that where a parent has a "more significant relationship" with the minor than presented in *J.W.*, adequate notice may be required. 87 Ill. 2d 56, 60.

Since *J.W.*, the appellate court has held that failure to serve notice of delinquency proceedings on a noncustodial parent did not deprive the trial court of jurisdiction. *In re Stokes* (1982), 108 Ill. App. 3d 637, 439 N.E.2d 514; *In re Vaught* (1981), 103 Ill. App. 3d 802, 431 N.E.2d 1231; *In re R.S.* (1983), 117 Ill. App. 3d 698, 453 N.E.2d 139; *People v. Taylor* (1983), 113 Ill. App. 3d 467, 447 N.E.2d 519; *In re J.A.* (1982), 108 Ill. App. 3d 426, 439 N.E.2d 72; *In re L.E.J.* (1983), 115 Ill. App. 3d 993, 451 N.E.2d 289; *In re S.W.C.* (1982), 110 Ill. App. 3d 695, 442 N.E.2d 961; *In re D.J.B.* (1982), 107 Ill. App. 3d 482, 437 N.E.2d 888.

In *In re Vaught* (1981), 103 Ill. App. 3d 802, 431 N.E.2d 1231, the father's identity was known and his whereabouts were indicated as "Bremen Ky." Relying on *J.W.*, the court held that failure to notify the father did not deprive the court of jurisdiction. Further, the minor's commitment to the Department of Corrections would be reversed if it were found the father was an indispensable party to the proceeding. As the custodial parent was served and did appear, and since the record was silent as to what interest of the absentee father would be affected by the adjudication, the father was found not to be an indispensable party and the judgment entered in his absence did not require reversal. 103 Ill. App. 3d 802, 804-05, 431 N.E.2d 1231,

1233.

Even the State's exercise of less than due diligence in attempting to locate a parent's address does not deprive the court of jurisdiction. (*In re L.E.J.* (1983), 115 Ill. App. 3d 993, 996, 451 N.E.2d 289, 292; *In re S.W.C.* (1982), 110 Ill. App. 3d 695, 697, 442 N.E.2d 961, 963; *In re D.J.B.* (1982), 107 Ill. App. 3d 482, 486, 437 N.E.2d 888, 891.) In *In re S.W.C.* and in *In re D.J.B.*, the argument was made, similar to that in the present case, that the State's failure to exercise due diligence in notifying respondent's parent of the adjudicatory hearing renders the judgment void. In both cases there was some evidence that the minor informed the court of his absentee parent's address (*In re S.W.C.*), or that further inquiry would have disclosed the precise address of the absent parent. (*In re D.J.B.*) The court in both cases upheld the finding of delinquency and reasoned that where the evidence demonstrates a lack of interest on the part of the absent parent, failure to personally serve or notify by certified mail, even if possible, will not require reversal if the custodial parent has been properly notified. As the court noted in *S.W.C.*:

"Thus, notice to the custodial parent is what is crucial. That is all that is required under section 4—4(2) of the Juvenile Court Act. (Ill. Rev. Stat. 1981, ch. 37, par. 704—4(2).) Unless a minor shows some significant relationship with a noncustodial parent that is affected by the adjudication, he cannot stand silent at a hearing where he is represented by counsel and where his custodial parent is present and then later be heard to complain about lack of notice.

The noncustodial parent should be served personally or by mail whenever possible and the court should endeavor to ascertain the full extent of the minor's relationship with him or her, but failure to do so is not fatal on the facts of this case." *In re S.W.C.* (1982), 110 Ill. App. 3d 695, 698-99, 442 N.E.2d 961, 964.

A more extreme example of the State's failure to give notice to a noncustodial parent was presented in *In re L.E.J.* (1983), 115 Ill. App. 3d 993, 451 N.E.2d 289. In *In re L.E.J.*, no attempt was made at notification, publication or service upon any of the named respondents. The petition contained the names and the last known addresses of the minor's parents and of his legal guardian. The mother appeared at the adjudicatory hearing, and the Department of Children and Family Services, as legal guardian, appeared throughout the proceedings. The court found that the termination of the father's foster care of the minor 17 months prior to the offense and the belief that the

absent father had moved from Illinois to Colorado indicated that he was not an indispensable party to the proceedings and no reversible error occurred. 115 Ill. App. 3d 993, 998, 451 N.E.2d 289, 293.

■ It appears from the record that the minor and his mother were personally served with notice of the delinquency proceeding and appeared at trial represented by counsel. The petition listed respondent's father's address as being "not available." The return indicated his father was not served. It was learned at the dispositional hearing that respondent had been in the sole custody of his mother since his parent's divorce in 1981 and that his father last accompanied the minor to court in September of 1981 on a prior delinquency petition. There is no indication in the record that the State attempted service by certified mail or notice by publication. No objection was made at any of the proceedings to the absence of the minor's father and is raised for the first time on appeal. Respondent argues that the cases cited above are distinguishable because they involve the issue of whether notice by publication was excused in view of section 4—4(2) of the Act rather than the more fundamental issue of whether notice of publication is inadequate unless the State has exercised due diligence in finding the parent's address and personal service or notice by certified mail cannot be attained. We disagree. First of all, the minor's counsel ignores the supreme court's discussion of the interplay of *in personam* jurisdiction and the concept of indispensable parties and reads *J.W.* too narrowly. *J.W.* clearly mandates that where a noncustodial parent's interest will not be significantly affected in a proceedings, notice by publication is sufficient but is not necessary as provided under section 4—4(2) of the Act where the custodial parent has been served. This proposition has been relied upon in several districts of the appellate court faced with this issue in finding that failure to give proper notice of a delinquency proceeding to the noncustodial parent, whether it be through personal service, certified mail or published notice, does not deprive the court of jurisdiction over the parties properly before it.

Respondent relies primarily on *In re R.P.* (1981), 97 Ill. App. 3d 889, 423 N.E.2d 920, as support for the contention that the trial court lacked jurisdiction based on the State's failure to exercise due diligence in ascertaining the father's address so service by certified mail could be effected. As *In re R.P.* predates the supreme court's decision in *J.W.* and cites *In re J.W.* (1980), 89 Ill. App. 3d 150, 412 N.E.2d 9, which was reversed on appeal in *J.W., In re R.P.* is no longer good authority and appears to have been implicitly overruled by later Third District appellate court cases. (See *In re R.S.* (1983), 117 Ill. App. 3d

698, 703-04, 453 N.E.2d 139, 143; *In re J.A.* (1982), 108 Ill. App. 3d 426, 427, 439 N.E.2d 72, 73.) In *In re R.S.*, the court held that notice to the custodial parent obviated the need to serve notice upon the noncustodial parent, even with a known address.

Respondent also relies on *In re T.B.* (1978), 65 Ill. App. 3d 903, 382 N.E.2d 1292, in which the summons regarding the minor's adjudicatory hearing was sent via certified mail to the mother's last known address in Peru, Illinois. It was returned with a postal stamp marked "moved, left no address." Notice to the mother of the hearing was then published. The record did not indicate whether she appeared at the hearing. At the dispositional hearing, it was learned that the minor's mother had moved to Arizona. The minor was aware of that fact and had mentioned it to the police before the summons was sent to the Peru address. Also, the father was described as a long-time alcoholic who had little interest in his family. The court held that the State failed to exercise due diligence in locating the mother's new address. It was suggested that the State could have learned of the mother's whereabouts through inquiry among the mother's former neighbors or of the father, if he was available, to locate her. Significantly, the *T.B.* court did not fault the State's efforts to notify the father, even though it was not apparent of the record that he received any sort of notice of the proceedings. Therefore, it can be inferred that the court believed that notice to the noncustodial parent was not important. As *In re J.W.* (1981), 87 Ill. 2d 56, controls the disposition of this issue and the record is silent as to what interests of the father would be affected, respondent's argument is without merit.

In so holding we are mindful of the caveat in *In re L.E.J.* (1983), 115 Ill. App. 3d 993, 996, 451 N.E.2d 289, 292, that the bench and bar are reading *In re J.W.* (1981), 87 Ill. 2d 56, and *In re S.W.C.* (1982), 110 Ill. App. 3d 695, 442 N.E.2d 961, too expansively. For example, noticeably absent in *In re R.S.* (1983), 117 Ill. App. 3d 698, 453 N.E.2d 139, and *In re J.A.* (1982), 108 Ill. App. 3d 426, 439 N.E.2d 72, is any discussion of the absentee parent's status as an indispensable party to the proceeding. An analysis of the relationship between the minor and the noncustodial parent is essential in determining whether the trial court's proceeding in the absence of a party whose rights have been adjudicated violates due process. Those cases hold that service on a custodial parent is enough which we believe would only suffice if the noncustodial parent's interests were not significant and personal service had been effected on the custodial parent pursuant to section 4—4(2). Ill. Rev. Stat. 1981, ch. 37, par. 704—4(2).

██ The record here indicates that the minor's parents were divorced in July 1981; apparently the minor's last contact with his father was in September 1981 or about 17 months prior to the instant adjudication; no child support had been received for a year prior to the dispositional hearing in May 1983 and the record is silent as to the father's exercise of any rights or opportunities for visitation with the minor. Under these facts we believe the father was not an indispensable party. (See *In re J. W.* (1981), 87 Ill. 2d 56, and *In re L.E.J.* (1983), 115 Ill. App. 3d 993, 451 N.E.2d 289.) The State should be criticized for its failure to comply with the statute in the manner easily accomplished by the probation department for the dispositional hearing. Nonetheless, under the particular facts of this case there were no deficiencies relating to notice such that would render the court's order voidable. Nor have any due process violations occurred.

LIMITATION OF CROSS-EXAMINATION:
ALLEGED PROMISES OF LENIENCY

Respondent's second contention is that the trial court improperly limited respondent's counsel's cross-examination of Officer Fuller regarding evidence which respondent argues affected the credibility and weight of respondent's confession so as to deny respondent a fair adjudicatory hearing.

It is well established that the defense can present evidence on the credibility and weight to be given a confession even though the trial court has found the confession voluntary and has admitted it into evidence. *People v. Cook* (1965), 33 Ill. 2d 363, 369-70; *People v. Scott* (1963), 28 Ill. 2d 131; *People v. Schwartz* (1954), 3 Ill. 2d 520; *People v. Monroe* (1981), 95 Ill. App. 3d 807, 814, 420 N.E.2d 544, 549; *People v. Fleming* (1981), 103 Ill. App. 3d 194, 197, 431 N.E.2d 16, 19.

██ In the present case, respondent attempted to challenge the confession he made to police by adducing testimony from the interrogating officer about alleged promises of leniency made by police during questioning in exchange for respondent's confession. Unlike the cases cited above, this point had been one of the bases for respondent's pretrial challenge of the voluntariness of his confession. Here, the trial judge, as the trier of fact, was made aware at the suppression hearing of the possibility that respondent's statement may not have been voluntary. While a person can introduce evidence in a bench trial tending to discredit his confession (*People v. Schwartz* (1954), 3 Ill. 2d 520, 523), in *Schwartz* the challenge to discredit the defendant's confession was raised for the first time at trial before the trial judge. The Illinois Supreme Court held that the denial of the

defendant's right to introduce competent and relevant evidence requires the conviction to be set aside and remanded for a new trial. Here, unlike *Schwartz*, the trial judge, after considering the testimony of the interrogating officer and the minor and the arguments of counsel, found the State's witnesses to be more credible and concluded there was no psychological coercion or promises of leniency to render respondent's confession involuntary. Given the fact that the trial court was aware of the testimony, having heard it at the earlier suppression hearing, the court acted within its discretion to preclude the introduction of this evidence at the adjudicatory hearing and any error resulting in the restriction of cross-examination was harmless in the absence of any showing that a reasonable doubt exists that respondent was prejudiced by the restriction of cross-examination or that the outcome of the trial would have been different. *People v. Langston* (1981), 96 Ill. App. 3d 48, 420 N.E.2d 1090.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P.J., and VAN DEUSEN, J., concur.