HOARDWOOD, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF PUB-
LIC AID *et al.*, Defendants-Appellees.

First District (1st Division)   No. 85—0966

Opinion filed September 26, 1988.

Fisch, Lansky & Greenburg, of Chicago (Barry H. Greenburg, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Karen Konieczny, Special Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE MANNING delivered the opinion of the court:

Plaintiff, Hoardwood, Inc., licensee of Ora G. Morrow Nursing Center (facility), appeals from the March 4, 1985, order of the circuit court of Cook County which affirmed the final administrative decision issued by the defendant, Illinois Department of Public Aid (IDPA or Department). That decision was to suspend the facility from participating in the Illinois Medical Assistance Program for the period of June 30, 1982, to October 15, 1982. The court also upheld the IDPA's authority to require, as a condition to continued participation in the program, the execution of an indemnification agreement between the plaintiff and the IDPA in order to protect the Department from the potential loss of Federal financial participation.

On March 5, 1982, defendant, Illinois Department of Public Health (IDPH) inspected the Ora G. Morrow Nursing Center, a skilled nursing facility participating in the Illinois Medical Assistance Program. During the inspection, several deficiencies were found which violated Federal and State regulations. The deficiencies included "failure to provide the appropriate number of licensed nurses, failure to care for patients and to maintain the facility adequately, and failure to document records appropriately." Subsequently, a plan of correction was submitted for purposes of certification.

On May 21, 1982, the Director of IDPH issued a decision to terminate and not renew the Medicaid certification of the facility effective June 30, 1982. Thereafter, the plaintiff, Hoardwood, Inc., was notified of its opportunity for an administrative hearing to refute the basis of IDPH's decision. The notice of hearing also informed the plaintiff of IDPA's intent to terminate or suspend the eligibility of the plaintiff to participate as a vendor of the Medicaid program because of the termination of the plaintiff's certification by IDPH.

On June 23, 1982, plaintiff submitted a written request for a hearing. On December 7, 1982, a hearing on the merits was convened regarding the facility's termination from the Medicaid program. The administrative hearing was conducted jointly by the IDPH and the IDPA pursuant to regulations. (89 Ill. Admin. Code 104.320 (1985).) Prior to the hearing, on October 15, 1982, the IDPH had conducted a survey of the facility and had determined that the nursing facility was certifiable as of October 15, 1982.

On January 7, 1983, the hearing officer concluded that "grounds exist to affirm the action taken by the IDPH to terminate and not renew certification of the facility effective on June 30, 1982, through October 15, 1982." The hearing officer further concluded that the evidence which supports termination also supports suspension. Therefore, the hearing officer recommended suspension of the nursing facility for the period of June 30, 1982, to October 15, 1982.

On March 15, 1983, the Director of IDPH accepted the hearing officer's recommendation and certified the Ora G. Morrow Nursing Center as an eligible facility to participate in the Medicaid program effective October 16, 1982.

The Executive Deputy Director of the IDPA issued that agency's final administrative decision on February 14, 1984, accepting the hearing officer's recommendation and noted that the IDPA had made payments to the nursing home during the suspension period, amounting to a potential reduction in Federal funds of $219,672. A carbon copy of that decision was forwarded to the Director of the IDPA. Plaintiff's continued participation in the Medicaid program was conditioned on: (1) repaying the IDPA the sum of $219,672 or (2) executing an indemnity agreement which will protect the IDPA from a potential loss of Federal monies.

The plaintiff filed a complaint in the circuit court of Cook County on March 8, 1984, requesting a judicial review of the IDPA's final administrative decision. A hearing was held on March 4, 1985, and the trial court affirmed the IDPA's final administrative decision regarding the June 30, 1982, to October 15, 1982, suspension and the requirement of execution of an indemnification agreement between the plaintiff and the IDPA.

Plaintiff initially maintains that the administrative decision issued by the IDPA is void on its face because the Executive Deputy Director lacks the authority to render a binding administrative decision or to assess and enforce penalties. (Ill. Rev. Stat. 1985, ch. 111½, pars. 4153—307, 4153—310, 4153—707.) The Illinois revised statutes provide:

"The Director or hearing officer shall make findings of fact

in such hearing, and the Director shall render his decision within 30 days after the termination of the hearing, unless additional time not to exceed 90 days is required by him for a proper disposition of the matter. When the hearing has been conducted by a hearing officer, the Director shall review the record and findings of fact before rendering a decision. All decisions rendered by the Director shall be binding upon and complied with by the Department, the facility or the persons involved in the hearing, as appropriate to each case." Ill. Rev. Stat. 1985, ch. 111½, par. 4153—707.

Conversely, the defendant argues that the final administrative decision issued by the Executive Deputy Director of the IDPA is valid and binding. We agree. The Public Aid Code vests in the IDPA generally, not the Director specifically, the authority to terminate or suspend the eligibility of a Medicaid provider which is not properly licensed and to recover money improperly or erroneously paid. (Ill. Rev. Stat. 1985, ch. 23, pars. 12—4.25(B), (E).) However, the Illinois Administrative Code specifically provides that the Director of the IDPA "shall" make a final decision concerning participation in the Medicaid program, based on the findings of fact and the recommended decision of the hearing officer and the final certification determination by the IDPH. 89 Ill. Admin. Code 104.320 (1985).

■ The use of the word "shall" in a statute often indicates mandatory language; however, under certain circumstances, it can be construed as directory rather than mandatory. (*In re D.J.B.* (1982), 107 Ill. App. 3d 482, 484, 437 N.E.2d 888; *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332.) Moreover, the entire statute must be considered, including the possible consequences in construing it in a certain manner. *In re D.J.B.* (1982), 107 Ill. App. 3d 482, 484, 437 N.E.2d 888; *In re Armour* (1974), 59 Ill. 2d 102, 104, 319 N.E.2d 496.

■ It is common practice for a director of an agency to delegate his authority to a subordinate during periods of unavailability in order for the agency to continue operating at an optimum level. Alternatively, a director may delegate specific responsibilities to a subordinate on an ongoing basis. In the instant case, the Director was actually provided a carbon copy of the final administrative decision and it was implicit by that action that the Director had delegated his authority to review the recommended decision of the hearing officer and to issue the final administrative decision to the Executive Deputy Director. Administrative agencies must be allowed to develop procedures for handling their business. (*Board of Governors v. Illinois Human Rights Comm'n* (1982), 109 Ill. App. 3d 946, 952, 441 N.E.2d 391,

395.) Moreover, where administrative agencies have an expressed statutory grant of power, they are empowered to do all that is reasonably necessary to execute the power or perform the duty. *Chemetco, Inc. v. Pollution Control Board* (1986), 140 Ill. App. 3d 283, 286-87, 488 N.E.2d 639.

■ Although the experience of an administrative agency in interpreting the law under which it operates is not controlling, it is considered in reaching a final decision. (*Heerey v. Zoning Board of Appeals* (1980), 82 Ill. App. 3d 1088, 1093-94, 403 N.E.2d 617; *National Consolidated Industries, Ltd. v. Department of Insurance* (1979), 73 Ill. App. 3d 816, 822, 392 N.E.2d 295.) Moreover, "[a] reviewing court should accord substantial discretion to administrative agencies in the construction and application of their rules, interfering only if a body's interpretation is plainly erroneous or inconsistent with long-settled constructions." *Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 421, 447 N.E.2d 418.

■ While it may have been preferable for the legislature to expressly use the language of "Director *** or his designee," as we find in the Nursing Home Care Reform Act of 1979 (Ill. Rev. Stat. 1985, ch. 111½, par. 4151—110) (but which has applicability only to the Director of Public Health and not the Director of Public Aid), the absence of this explicit language does not indicate a contrary intent. Moreover, the consequences of literally applying the plain meaning of the term "Director" under the facts of this case could be detrimental to the efficient operation of the State Medicaid plan. An application of that nature appears to be contrary to the perceived intent of the drafters in promulgating the statute. Accordingly, we conclude that the execution of the final administrative decision by the Executive Deputy Director was not improper.

Plaintiff argues additionally that the penalty imposed by the IDPA, which provides that plaintiff's future participation in the medical assistance program is contingent upon its entering into an indemnification agreement with the State of Illinois, is without legal authority and, consequently, should be reversed. The IDPA maintains, however, that it can require the plaintiff to indemnify the State of Illinois against a potential loss of Federal Medicaid payments to the plaintiff as a condition of the plaintiff's continued participation in the Medicaid program. Ill. Rev. Stat. 1985, ch. 23, par. 12—4.25(E).

■ We agree with the plaintiff's position. While we find nothing improper about the Executive Deputy Director issuing the final administrative decisions, we do conclude that he exceeded his scope of delegated authority by fashioning a remedy requiring the plaintiff to

execute an instrument to indemnify the State against the potential loss of Federal Medicaid monies. That form of relief was not contemplated by the pertinent Federal and State regulations or statutes.

The Medicaid program is a joint program between the Federal and State governments wherein the Federal government provides matching funds under Title XIX of the Social Security Act to enable States to provide medical services to certain needy individuals. (42 U.S.C. §1396 *et seq.* (1982); *Schweiker v. Hogan* (1982), 457 U.S. 569, 571, 73 L. Ed. 2d 227, 102 S. Ct. 2597.) States must submit a State plan for medical assistance for approval by the Secretary of Health and Human Services which conforms to the requirements of 42 U.S.C. §1396a (1982) if they wish to participate in the Medicaid program. *Department of Public Aid v. Schweiker* (7th Cir. 1983), 707 F.2d 273, 275; *Mississippi Medical Comm'n v. Department of Health & Human Services* (S.D. Miss. 1985), 633 F. Supp. 78, 80, *aff'd* (5th Cir. 1986), 786 F.2d 1161.

The IDPH has the duty to inspect and license nursing homes and to determine whether the facility is in compliance with Federal and State requirements in order to certify the facility's participation in the Medicaid program. (Ill. Rev. Stat. 1981, ch. 111½, par. 4151—101 *et seq.*) To participate in the Medicaid program, a State must designate a single State agency to administer the State Medicaid plan. (42 U.S.C. §1396(a)(5) (1982).) The IDPA has been designated as the State agency responsible for administering the State Medicaid plan.

The Federal government makes advance Medicaid payments to States on an estimated basis, expressly reserving the right to recover from the State all monies that the Federal government later determines were overpayments and, therefore, subject to disallowance. (42 U.S.C. §§1396(b)(d), 1316(d) (1982).) If the Federal government has paid the Federal matching share to the State, and the Secretary of Health and Human Services determines that an overpayment has been made, he can make the adjustment in future payments. (42 U.S.C. §1396(b)(d)(2) (1982); *State of North Carolina v. Heckler* (D.N.C. 1984), 584 F. Supp. 179, 181.) In the case at bar, the Federal government has not determined that an overpayment has been made. The defendant is simply seeking to have plaintiff execute an indemnification agreement as protection for the IDPA if the Federal government later determines that the payment of monies during the suspension period was improper.

The IDPA is authorized to make Medicaid payments to certified nursing homes, to suspend or terminate the eligibility of a facility that is not properly licensed, or it may "recover money improperly or erro-

neously paid, or overpayments, either by set-off, crediting against future billings or by requiring direct repayment to the Illinois Department." (Ill. Rev. Stat. 1985, ch. 23, pars. 12—4.25(B), (E).) In the instant case, the IDPA chose to suspend rather than terminate the plaintiff's eligibility, and the plaintiff correctly asserts that there are no provisions under Federal or State law for the termination of funding based on a suspension of a nursing facility.

Federal regulations do provide administrative procedures to be followed if the State agency takes action to suspend or terminate services, including notice informing the recipient of his right to a hearing and an administrative hearing. (42 C.F.R. §431.200 (1982).) Federal regulations further provide:

"(c) The agency must reinstate and continue services until a decision is rendered after a hearing if—
***
(2) The recipient requests a hearing within 10 days of the mailing of the notice of action; and
(3) The agency determines that the action resulted from other than the application of Federal or State law or policy." 42 C.F.R. §431.231 (1982).

It cannot be determined from the record when the notice of action was actually mailed. However, it was signed by the administrator of the Illinois Medical Assistance Program on June 10, 1982, and stamped received on June 18, 1982. Moreover, the notice expressly stated that "a request for hearing must be submitted *** within (10) days after receipt of this notice." On June 23, 1982, plaintiff submitted a written request for a hearing. We, therefore, conclude that plaintiff complied with the regulations relative to the request for an administrative hearing. However, the defendants assert that the action to suspend services resulted specifically from a violation of Federal and State regulations as noted in the IDPH's allegations of noncompliance. Therefore, the defendants maintain, the IDPA was not required to continue services until a hearing decision was rendered.

However, since the IDPA did allow services to continue during the suspension period, to then require the execution of an indemnification agreement as protection against a potential loss of Federal financial participation would be contrary to the law since Federal regulations explicitly provide that Federal financial participation is available for payment for services continued pending the hearing decision. 42 C.F.R. §431.250 (1982).

We, therefore, conclude that since Federal regulations expressly provide for payment for services that are continued pending a hearing

decision, and there has been no determination by the Federal government of an overpayment, the trial court improperly affirmed the IDPA's final administrative decision, requiring the plaintiff to execute an instrument to indemnify the State against the potential loss of the $219,672 in Federal Medicaid monies received by the Ora G. Morrow Nursing Center during the decertification period as a condition for participation in the Medicaid program.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed in part and reversed in part.

Judgment affirmed in part; reversed in part.

BUCKLEY and O'CONNOR, JJ., concur.