THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD WEST, Defendant-Appellant.

First District (5th Division)   No. 1—91—1340

Opinion filed June 3, 1994.

Rita A. Fry, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James Veldman, and Steven Rosenblum, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Defendant, Ronald West, was found guilty of first degree murder after a bench trial and was sentenced to 40 years' imprisonment. On appeal, defendant contends that he was denied a fair trial when the trial court excluded a prior consistent statement that he made to police. Defendant also argues that the trial court committed reversible error when it refused to allow cross-examination of a police officer on the issue of the voluntariness of his confession at trial because it had already heard evidence on that issue during a motion to suppress. For the reasons set forth below, we affirm the judgment of the trial court.

## FACTS

Defendant was arrested and charged with first degree murder in connection with the death of Howard Powers, who was shot four times in the head. Prior to trial, defendant filed a motion to quash his arrest and a motion to suppress statements that he made to police. At the hearing on the motion to suppress, Detectives Kato and Sommerville, who arrested and interviewed defendant, testified that they did not threaten, coerce or strike defendant during the interview. They testified that defendant gave a statement in which he admitted shooting the victim accidently. Detective Sommerville testified that defendant then recanted that statement when he was confronted with a body count diagram showing four bullet holes at the rear of the victim's head. According to Sommerville, upon seeing the diagram defendant stated, "that looks like an execution. I did not fire the gun. I was in the back seat." The testimony of the two police witnesses was corroborated by Assistant State's Attorney Barbaro, who stated that he was present with Detective Sommerville when he was interrogating defendant. The trial court subsequently denied both of defendant's motions.

A bench trial was held at which the following facts and evidence were revealed. On February 14, 1988, at approximately 4:15 p.m., police officers arrived at 650 N. Kedzie Avenue in response to an accident call. They found the victim's 1983 gray Lincoln Town car on the sidewalk wedged between a building and a tree. The victim, How-

ard Powers, was in the driver's seat and was bleeding from his head. There was blood on the driver's headrest, the glove compartment, the back seat behind the driver, the rear passenger door and in the snow outside that door. Only the rear passenger door was operable after the accident.

Dr. Kirschner, deputy chief medical examiner, testified that his autopsy revealed that the victim died from four gunshot wounds to the head. The first entered directly above the left ear, passed through the brain and exited from the right side of the victim's scalp. The second entered behind the victim's right ear and exited from his left cheek. The third entered right below the second, passed through the neck and then lodged in the rear aspect of the mouth. The fourth bullet entered the rear of the head just to the right of the midline and lodged in the left side of the brain. There was no evidence of close-range firing, but Dr. Kirschner stated that it would be difficult to determine whether the shots were fired from closer than 12 inches without having the weapon in question.

Ivory Brown, the victim's father, testified that defendant sold drugs for the victim. Brown said that at 7 p.m. on February 12, 1988, the victim, Tina Fairman, Richard West, "Newbaby" and "Grayhound" were at his home. According to Brown, the victim was also there the next night with defendant and they left together. Ramon Rollins, Newbaby and possibly Grayhound were also there at that time.

Tina Fairman stated that at approximately 2:45 p.m. on the date of the incident she was on a bus which was stopped at the intersection of Roosevelt Road and Kedzie Avenue. She noticed two cars parked in a gas station located on that corner. One of the cars was the victim's car. The victim and an individual Fairman knew as "Newbaby" were standing next to the car and two other people were sitting inside the car. Fairman stated that Richard West, another individual she knew as "Grayhound," Ramon Rollins, and Willie Lauren were standing near the second car. She testified that the victim got into the driver's seat of his car and that Newbaby got into the back passenger seat of that car. Fairman refused to identify the person sitting directly behind the victim in his car, but admitted that she told police earlier that she thought that person was the defendant, who was known to her as "Rudy V." Grayhound, Rollins and Richard West got into the second vehicle. The bus on which Fairman was riding pulled out and both vehicles followed the bus along Kedzie Avenue until they turned off onto Lake Street.

Patrick Simms testified that at approximately 4 p.m. on the date of the occurrence he was near the intersection of Huron and Kedzie

when he heard a crash in the alley. Simms saw two men whose faces he could not see running north from a car which had crashed between a building and a tree. Simms also saw a third man coming out of the rear passenger side door of the disabled vehicle. This person ran south at first, but then turned north and followed the other two men. The third man, who was covering his face with his hands at the time, knocked Simms down as he ran by him. Simms described this man as being a tall, thin 19- or 20-year-old African-American who was light skinned with red spots on his face. Simms was unable to identify this man from a photograph lineup arranged by police.

Detective Kristan Kato testified that he arrested defendant at approximately 6 a.m. on February 24, 1989. Kato advised defendant of his *Miranda* rights and defendant indicated that he understood his rights. Detective Kato stated that he and his partner, Detective Sommerville, talked to defendant for about 15 minutes at approximately 6:30 a.m. After again advising defendant of his rights, they spoke with defendant at 11 a.m. Kato said that during that meeting, the detectives informed defendant that Tina Fairman had told them that she had seen defendant with the victim at the gas station about 20 minutes before the victim was shot. Kato testified that at this point, they asked defendant to take a polygraph test and defendant refused, telling them that he would tell them the truth.

According to Kato, defendant proceeded to give the following statement. Defendant said that on February 14, 1988, the victim called him to purchase drugs. The victim drove by with Newbaby and Rollins and picked him up. Defendant got in the victim's car and sat in the rear driver's side seat. Newbaby was in the front passenger seat and Rollins was in the rear passenger seat. The victim drove the car north on Kedzie Avenue in order to purchase drugs while others in another car followed. Defendant stated that Rollins handed him a .25-caliber pistol. While defendant was inspecting the gun it discharged and the bullet struck the victim in the head. Defendant, startled by the first gunshot, then accidently fired the gun a second time and the second bullet also struck the victim in the head. According to defendant, the victim lost control of the car at that point and the car struck a tree. The impact caused the gun to go off a third time; again the bullet struck the victim in the head. He, Newbaby and Rollins then fled, with defendant being the last person to exit the car. Defendant disposed of the gun while he was running home.

During cross-examination, defense counsel attempted to ask Detective Kato whether he struck defendant during the questioning which resulted in defendant's confession. After the witness answered

"no," the State objected and the trial court sustained the State's objection on the grounds that that area had already been covered at the hearing on the motion to suppress defendant's confession.

Assistant State's Attorney Joseph Barbaro testified that he interviewed defendant with Detective Sommerville around 1:30 p.m. on the day of his arrest. After defendant received his *Miranda* rights, he made the same statement he had made earlier to Detectives Kato and Sommerville. Barbaro asked defendant whether he was all right and defendant responded that everything was okay. Barbaro stated that after defendant made his statement, Detective Sommerville showed defendant the body chart which indicated that the victim had been shot four times, not three as testified to by defendant. Barbaro said that defendant stated that it looked like an execution to him. At that point, defendant recanted his earlier statement and refused to initial the written statement which Barbaro had prepared. Barbaro testified that defendant then claimed that he was in the front passenger seat of the car and that Newbaby was in the backseat.

After the State rested, defendant testified on his own behalf. He stated that he knew the victim for a few years and that he saw the victim twice on the day of the incident. At approximately 2 p.m. on that day, the victim visited defendant at the home of defendant's mother. The victim then drove off alone, returning at around 3:45 p.m. with three African-American males in the backseat. Defendant did not know the names of these men, but knew that they sold drugs for the victim. Defendant admitted that he sold narcotics, but denied doing so for the victim.

Defendant testified that he got into the rear passenger seat of the victim's car and the victim got into the driver's seat. Defendant denied that he told Detective Harris that he sat behind the victim in the rear driver's side seat. Defendant said that the man who sat behind the victim was a light-skinned male with curls in his hair and little spots on his face like pimples. Defendant attempted to testify that he gave a similar description of this man to the police a couple of days after the victim was murdered, but the trial court sustained the State's objection to this statement on the grounds that it was an inadmissible prior consistent statement.

Defendant further testified that he could not name the other males who were in the car with the victim. Defendant stayed at his mother's house and the victim drove off with the three African-American males in the car. He never saw the victim again. Defendant denied shooting the victim or being present when the victim was shot.

Defendant said that he was arrested by Detective Kato on Febru-

ary 24, 1989, and had a conversation with him shortly thereafter. Defendant stated that he again spoke with Kato and Detective Sommerville several hours later. Defendant denied that he refused to take a polygraph test, but admitted telling Kato and Barbaro the story which they related at trial. Defendant admitted that he changed his initial story after viewing the body chart.

On cross-examination defendant denied that he had supplied Detective Kato with the names of the other men in the car when he made his initial statement.

On redirect, defendant again attempted to testify to the prior statement he gave police a few days after the murder concerning his description of the man who was sitting behind the victim. The trial court again sustained the State's objection to that statement as an improper consistent statement.

Defendant then testified that he had been up all night and was high on heroin when he gave police his initial statement following his arrest. Defendant said that he knew what was happening and understood the detectives' questions. He claimed that he made up the accidental shooting story because he was tired and wanted to lie down. Defendant stated that the police slapped him around, kicked him and chopped him in the throat during the interrogation. They also told him that two people had identified him as the man who shot the victim.

On re-cross-examination, defendant admitted that Barbaro asked him how he was feeling and how he was being treated by the police. Defendant conceded that he responded that he was okay and that he had no complaints. Defendant admitted that he never told Barbaro that he was high on heroin or that the police struck him during the interrogation.

Defense counsel also offered a stipulation that if Detective Thedford were called as a witness he would testify that on February 17, 1988, he showed eight photographs to Simms, including a picture of defendant. Thedford would testify that Simms was not able to make an identification, but told Thedford that he believed he could identify the third man who exited the vehicle. Furthermore, Thedford would testify that Simms told him that the third man was light skinned and had red spots on his face, like acne.

Prior to the State's rebuttal, defense counsel sought to reopen defendant's case to offer a stipulation that Detective Thedford would testify that defendant provided him with a description of the person in the back seat of the victim's car in February 1988. The judge refused this stipulation, ruling that it was self-serving.

In rebuttal, the parties stipulated that Detectives Kato and Som-

merville would testify as they did during the motion to suppress. It was also stipulated that Kato would testify that defendant had given him the names of the people who were with him and the victim prior to the shooting. The parties also stipulated that if called to testify Detective Harris would say that he interviewed defendant on February 16, 1988, at which time defendant told him that he sat in the rear driver's side seat of the victim's car on the day in question. Finally, both parties stipulated to defendant's two prior felony drug convictions.

The trial court found defendant guilty of first degree murder and sentenced him to 40 years' imprisonment. Defendant now appeals.

OPINION

On appeal, defendant initially contends that he was denied a fair trial when the trial court excluded the statement that he made to Detective Thedford after the shooting, but prior to his arrest, concerning the description of the man seated behind the victim in the car. Specifically, defendant claims that the description that he gave to the police of that man was consistent with Simms' description of the last man to exit the car. Defendant contends that as a result of the similarity between these descriptions and the fact that Simms' testimony at trial preceded the defendant's testimony, defendant's trial testimony describing the man seated behind the driver would appear to be a self-serving attempt to exculpate himself by duplicating Simms' testimony. For those reasons, defendant urges that evidence of his prior consistent statement should have been admitted. We disagree.

■ It is well established that proof of a prior consistent statement made by a witness is hearsay and therefore inadmissible to bolster the witness' trial testimony. (*People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409; *Waller v. People* (1904), 209 Ill. 284, 70 N.E. 681.) The improper bolstering of a witness' credibility through the use of prior consistent statements "preys on the human failing of placing belief in that which is the most often repeated." (*People v. Sanders* (1978), 59 Ill. App. 3d 650, 654, 375 N.E.2d 921.) Prior consistent statements, however, "are admissible to rebut a charge or an inference that the witness is motivated to testify falsely or that his testimony is of recent fabrication." (*People v. Williams* (1991), 147 Ill. 2d 173, 227, 588 N.E.2d 983; *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) In these cases, "such evidence is admissible to show that he told the same story before the motive came into existence or before the time of the alleged fabrication." *Williams*, 147 Ill. 2d at 227; *People v. Harris* (1988), 123 Ill. 2d 113, 526 N.E.2d 335.

■ Here, there was no charge by the State, inferential or otherwise, of recent fabrication or invention which would have permitted introduction of defendant's prior consistent statement. (*People v. Smith* (1985), 139 Ill. App. 3d 21, 486 N.E.2d 1347.) In this case, the State never challenged the subject of defendant's prior consistent statement, namely, the specific description of the man in the rear driver's side seat, as a recent fabrication. (See *People v. Beals* (1992), 248 Ill. App. 3d 19, 26, 618 N.E.2d 273 (prior consistent statements not admissible where "trial counsel never implied that the witnesses' testimony was a recent fabrication or that the witnesses had a motive to testify falsely").) The State never contended during opening or closing argument, or suggested during its questioning of defendant, that he fabricated his description of the man in the car as the result of Simms' testimony or that Simms' testimony provided a motive for him to testify falsely. See *People v. Hayes* (1990), 139 Ill. 2d 89, 564 N.E.2d 803 (defense counsel's attempt to show that State's witnesses misidentified defendant in photograph lineup did not constitute a charge of recent fabrication or raise an inference of motive to testify falsely permitting admission of prior consistent statement); *People v. Crayton* (1988), 175 Ill. App. 3d 932, 530 N.E.2d 651 (prior consistent statement inadmissible where among other things no inference of recent fabrication or a motive to testify falsely was raised).

We cannot say that the State's mere presentation of Simms' testimony offering a description of the last man to exit the disabled vehicle in and of itself constituted a charge of recent fabrication or raised an inference that defendant was recently motivated to testify falsely. (*Hayes*, 139 Ill. 2d at 138; *Smith*, 139 Ill. App. 3d at 33.) The necessary inference which defendant asks us to draw in this case is grounded solely on the fact that Simms' testimony preceded his during trial. To allow such a remote inference created solely by the order in which witnesses testify to establish the predicate for the admission of a prior consistent statement would allow parties to submit prior consistent statements whenever cumulative evidence had been presented by a preceding witness. See *Hayes*, 139 Ill. 2d at 138; *Smith*, 139 Ill. App. 3d at 33.

Defendant also argues that the State's impeachment of him on cross-examination provides the basis for the introduction of his prior consistent statement. In this respect, defendant points out that on cross-examination he denied that he told Detective Kato the names of the other individuals who were in the victim's car at the time of the shooting. In rebuttal, the State offered Detective Kato's testimony that defendant gave him the names of the other people in the car.

Defendant contends that this impeachment constituted an implied charge that defendant's testimony concerning the men in the car was a recent fabrication and provided the basis for admitting his prior consistent statement. We disagree.

The mere fact that a witness is impeached does not permit any prior consistent statement to be admitted. To allow prior consistent statements to be used in such a manner would be to authorize the use of these statements solely to improperly bolster a witness' trial testimony, a use which is clearly prohibited. *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606 (in order for a prior consistent statement to be admitted it must rebut the charge of recent fabrication or it must qualify or explain the inconsistent statement); accord *People v. Andersch* (1982), 107 Ill. App. 3d 810, 438 N.E.2d 482.

■ Here, the prior consistent statement urged by defendant does not rebut or explain the impeachment of defendant on the issue of whether he named the other individuals in the victim's car. Rather, that prior statement goes to another distinct subject—whether he could offer a description of the man sitting behind the victim in the car. As such, the impeachment of defendant on an issue which was not the subject of defendant's prior consistent statement cannot be used to create a backdoor under the guise of an implied charge of recent fabrication through which the defendant's prior consistent statement may become admissible. See *Steffens*, 131 Ill. App. 3d at 147 (upholding exclusion of one-half of statement where impeachment of witness was on other half of such statement).

Even if there would have been reason to allow the prior consistent statement, its exclusion would have been a harmless error. The evidence in this case showing that defendant shot the victim was substantial. Defendant gave a statement to the police in which he admitted shooting the victim, albeit accidently. He was identified as being in the car approximately 15 minutes before the occurrence by Fairman. At that time, he was in the rear driver's side seat, the seat from where the physical evidence suggests the shots were fired. Moreover, defendant only presented his own testimony in his defense. This testimony was severely undercut by his own admission that he told two different stories to the police and then told yet a completely different third story at trial. (See *People v. Morando* (1988), 169 Ill. App. 3d 716, 523 N.E.2d 1061.) Additionally, the benefit which would be gained from the admission of the prior consistent statement is minimal since the trial court already had before it a similar description of the man provided by Simms, a disinterested eyewitness.

Under these circumstances, we cannot say that the failure to give any additional benefit by allowing this prior consistent statement to

show that defendant had not fabricated that portion of his trial testimony was prejudicial in light of the substantial evidence against defendant and the minimal additional benefit that this testimony would bring. See *People v. Finley* (1988), 178 Ill. App. 3d 301, 533 N.E.2d 94; see also *People v. Moody* (1990), 199 Ill. App. 3d 455, 557 N.E.2d 335.

Defendant next contends that the trial court committed reversible error when it restricted defendant's cross-examination of Detective Kato at trial with respect to the issue of the voluntariness of his confession for the reason that evidence on that issue had already been heard pursuant to defendant's motion to suppress.

The pertinent law on the boundaries of the court's power in this area was summarized by our supreme court in *People v. Peeples* (1993), 155 Ill. 2d 422, 492, 616 N.E.2d 294. There, the court stated:

> "It is settled that '[i]f a court rules that a confession is voluntary and admits it into evidence, the defendant still has a right to present evidence to the jury which affects the credibility and weight to be given the confession.' [Citations.] However, this right of defendant does not diminish the general rule that ' "the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere." ' [Citations.]"

■ At the outset, we note that even if the trial court erred in following the course that it did, such error would be harmless. Here, the same judge who conducted the hearing on the motion to suppress also presided over the trial. The record shows that the parties stipulated in the State's rebuttal that the testimony of both Detectives Kato and Sommerville would be the same as that they gave at the suppression hearing. During this hearing defendant cross-examined Kato on his actions during the interrogation and those questions and Kato's answers were put before the court during trial by the parties' stipulation. There was no indication given by defense counsel, either on appeal or below, that Kato's answers would have been any different at the trial phase of the proceeding. Moreover, defendant had a full opportunity to develop his position—that his confession was not voluntary—at trial, where he testified that he was kicked, chopped and beaten during the interrogation and that at the time of his statement he was high on heroin and had been up all night. (See *Peeples*, 155 Ill. 2d at 492-93.) As such, any error which occurred in restricting the cross-examination of Detective Kato would not have been prejudicial. See *In re J.P.J.* (1984), 122 Ill. App. 3d 573, 461

N.E.2d 578 (finding trial court's refusal to allow cross-examination on the issue of the voluntariness of confession was harmless); see also *Peeples*, 155 Ill. 2d at 492-93.

Moreover, we cannot say that the trial court committed a clear abuse of discretion in its decision to limit the cross-examination of Detective Kato. Unlike the cases on which defendant relies, which all involved jury trials or bench trials where no motion to suppress was made, defendant here received a bench trial in which the same judge presided over the motion to suppress and the trial.

On point is *In re J.P.J.* (1984), 122 Ill. App. 3d 573, 461 N.E.2d 578. There, the defendant attempted to challenge the voluntariness of a confession he had made by examining a police officer during a delinquency hearing in which the trial judge was acting as the trier of fact. The trial court prohibited defendant from eliciting testimony on this subject as it had already heard testimony on the voluntariness of the defendant's confession during a motion to suppress such confession. The appellate court affirmed, stating that "[g]iven the fact that the trial court was aware of the testimony, having heard it at the earlier suppression hearing, the court acted within its discretion to preclude the introduction of this evidence at the adjudicatory hearing." *In re J.P.J.*, 122 Ill. App. 3d at 582.

Here, too, as previously noted, the same judge presided over the motion to suppress and the trial where the issue of the voluntariness of the confession was raised. Although the more prudent course of action would have been to allow defendant to fully utilize his opportunity to cross-examine Detective Kato at trial, we cannot say that the trial court's refusal to rehear the same evidence for purposes of deciding the weight to be given the confession, rather than its admissibility, would be an abuse of discretion, particularly in light of the parties' stipulation that Detective Kato's testimony would be the same as that given during the motion to suppress. *In re J.P.J.*, 122 Ill. App. 3d at 582.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

MURRAY, P.J., and McNULTY,[1] J., concur.

---

[1]Justice Cousins was part of the panel which heard oral argument in this case. After his recusal, Justice McNulty was substituted on the panel and has read the briefs and listened to a tape of oral argument.