THIRD DIVISION

                                    Date Filed: May 26, 2004

No. 1-02-2772

THE PEOPLE OF THE STATE OF ILLINOIS,   ) Appeal from the

                                       ) Circuit Court of

           Plaintiff-Appellee,         ) Cook County.

                                       )

           v.                          ) No. 99 CR 19756

                                       )

TERRENCE RICHARDSON,                   ) Honorable

                                       ) Stanley J. Sacks,

           Defendant-Appellant.        ) Judge Presiding.

Modified Upon Denial of Rehearing

     JUSTICE HALL delivered the opinion of the court:

     Following a jury trial, the defendant, Terrence Richardson, was found guilty of the first degree murder of Destiny Redeaux and the attempted first degree murder of Woodrow Hubbard.  The defendant was sentenced to 60 years for the murder of Ms. Redeaux and 30 years for the attempted murder of Mr. Hubbard.  The trial court ordered the sentences to run consecutively to each other and to an 85-year sentence imposed in Wisconsin for attempted murder and first degree criminal sexual assault.
(footnote: 1)
     The defendant appeals his convictions and sentences, raising the following issues on appeal: whether the use of a witness's prior consistent statement deprived the defendant of a fair trial; whether the prosecutor's closing argument deprived the defendant of a fair trial; and whether the defendant's sentence exceeded the maximum term allowable under section 5-8-4(c)(2) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4(c)(2) (West 1996)).
(footnote: 2)
     At trial, Mr. Hubbard testified that, on November 5, 1996, Ms. Redeaux and he, accompanied by the defendant and William Summers, got into a car driven by Robert Parker.  While driving around, the defendant accused Mr. Hubbard of telling the police something about the defendant.  Mr. Hubbard denied talking to the police, but Mr. Summers told him he was lying.  Eventually, the car drove into an alley.  The defendant grabbed Mr. Hubbard by the collar and told Mr. Summers to get Mr. Hubbard out of the car.  Mr. Hubbard noticed that the defendant had a gun.  Mr. Summers removed Mr. Hubbard from the car while the defendant grabbed Ms. Redeaux.  Ms. Redeaux was taken to the front of the car by Mr. Summers.

     The defendant took Mr. Hubbard to the back of the car and ordered him to lie down on the ground.  The defendant shot Mr. Hubbard in the face.  Mr. Hubbard heard Ms. Redeaux hollering not to kill her.  Mr. Hubbard jumped up and tried to grab Ms. Redeaux, but he was unable to get her loose from Mr. Summers's grip.  When Mr. Hubbard saw the defendant coming towards him with the gun, he ran.  As he ran, he heard the defendant shooting at him.  

     After failing to secure help at a gas station, Mr. Hubbard returned to the alley.  The defendant, Mr. Summers and Mr. Parker were gone, and Ms. Redeaux appeared to be dead.  Mr. Hubbard  flagged down a fire truck.  The firemen began working on Ms. Redeaux.  When the police arrived, Mr. Hubbard described what had  happened and gave the police the names of the defendant and the two other men.  Mr. Hubbard was hospitalized for a week or two.

     Mr. Hubbard acknowledged that, in 1993, he had pleaded guilty to attempted murder and had been sentenced to six years in the Department of Corrections.  He further acknowledged that he had a pending charge for possessing a gun but that no promises had been made to him with respect to that case.  

     On cross-examination, Mr. Hubbard denied having been interviewed by defense counsel a year prior to trial.  

     Dr. Eupil Choi, deputy chief medical examiner for Cook County, testified that Ms. Redeaux died from multiple gunshot wounds.  

     Robert Parker testified that he met the defendant, whom he knew only as "Tim," through Mr. Summers a couple of months prior to incident in this case.   He had known Mr. Summers for about two years.  Mr. Parker also knew Mr. Hubbard through Mr. Summers.       On November 5, 1996, Mr. Parker and his date were watching movies when he received a page from Mr. Summers, stating that he was about to be stranded at a gas station.  Mr. Parker ignored the first page because this was his first date with the young lady.  However, after he received a second page, he called the telephone number and spoke with Mr. Summers.  Mr. Summers convinced him that he really needed a ride home.

     Mr. Parker then drove to a Mobile gas station on 55th Street.  While waiting there, he received another page from Mr. Summers directing him to 106th Street and Eggleston Avenue, where Mr. Hubbard's residence was located.  When Mr. Parker arrived at Mr. Hubbard's residence, the defendant, Mr. Summers, Mr. Hubbard and Ms. Redeaux got into Mr. Parker's car.  Mr. Summers directed Mr. Parker to drive around.  Mr. Parker needed gas to do so and stopped at a Mobile gas station at 98th Street and Halsted Street.

     After leaving the gas station, Mr. Summers told Mr. Parker that the defendant wanted to go west.  Mr. Parker entered the Dan Ryan expressway, driving northbound.  The defendant stated that he needed to make a telephone call, so Mr. Parker exited the expressway at 43rd Street and proceeded to an Amoco gas station at 43rd Street and Wentworth Avenue.  The defendant and Mr. Summers used one of the pay telephones, while Mr. Parker used the other one to call his date and tell her he would be back after dropping the defendant off.  

     After the men returned to the car, the defendant accused Mr. Hubbard of giving him up to the police, which Mr. Hubbard denied.  The defendant then asked Mr. Parker to drive around the block.  The defendant continued to accuse Mr. Hubbard of giving him up.  The defendant then stated that he wanted to talk to Mr. Hubbard in private and instructed Mr. Parker to turn into an alley between Wentworth Avenue and Wells Street.  

     At the defendant's direction, Mr. Parker stopped the car at about the middle or towards the end of the alley.  The defendant told Mr. Summers to get out of the car and to grab Mr. Hubbard.  The defendant then put his arm around Mr. Hubbard and Ms. Redeaux and pulled a gun out, which he placed at her side.  After everyone else exited the car, Mr. Parker pulled the car over to the side of the alley.  

     As Mr. Parker sat in the car facing southbound, he heard a shot.  As he looked in the rearview mirror, he saw Mr. Hubbard running northbound and the defendant shooting at him.  Ms. Redeaux begged the defendant not to kill her, but the defendant told her to lie down.  The defendant then put the gun to Ms. Redeaux's head and shot her twice.  

    After shooting Ms. Redeaux, the defendant and Mr. Summers got back into Mr. Parker's car.  Mr. Summers warned Mr. Parker that if he said anything, the police would be after him.  The defendant directed Mr. Parker to drive to 55th Street.  The defendant and Mr. Summers got out at the Mobil gas station at 55th Street, and Mr. Parker drove back to his date's residence.  

     Mr. Parker acknowledged that he had pleaded guilty to conspiracy to commit first degree murder in connection with this incident for which he received a sentence of four years in the Department of Corrections.  He also agreed to testify in this case.  

     Mr. Parker admitted that he did not call the police following the shootings of Mr. Hubbard and Ms. Redeaux but stated it was because he feared for his life.  

     On November 9, 1996, Mr. Parker was arrested.  When first questioned by the police, he denied any involvement in the shootings.  Mr. Parker was then questioned by the prosecutor as follows:

     "Q. There came a point in time during that day and the date of November 10 of 1996 when you in fact told the police and state's attorney what had actually happened in front of you back on November 5 of 1996, isn't that correct?

      A. Yes.

      Q. And your statement or the same testimony you had given before these ladies and gentlemen was taken down - -

      MR. KATZ (defense counsel): Objection.

      THE COURT: Sustained.  Disregard where he told the police same thing on - - November 10, 1996."

     On cross-examination, Mr. Parker testified that, while he was in police custody, he had been handcuffed to a wall, was not permitted to use the restroom when he requested and was not allowed to make any telephone calls for quite some time.  Finally, he was permitted to use the telephone.  After contacting his mother, he agreed to speak to the police.  

     Mr. Parker was charged with first degree murder.  After discussing the sentencing ranges with his attorney, Mr. Parker entered into a plea agreement with the State.  Under the terms of the agreement, the State would drop the first degree murder charge, Mr. Parker would be sentenced to four years for conspiracy to commit first degree murder, and he would testify against the defendant.  

     Following Mr. Parker's testimony on cross-examination,     The prosecutor argued that, in light of the defense's question of Mr. Parker regarding the plea agreement, on redirect examination he should be permitted to use Mr. Parker's prior consistent statement to rebut the defense's suggestion of recent fabrication.  Defense counsel denied that he had made any suggestion of recent fabrication.  He pointed out that Mr. Parker had told the same story prior to entering into the plea agreement.  However, the trial court ruled that the plea agreement created the inference that Mr. Parker changed his testimony and permitted the prosecutor to use Mr. Parker's prior consistent statement.

     At the conclusion of the trial, the jury found the defendant guilty of first degree murder and attempted first degree murder.  After the defendant was found ineligible for the death penalty, he was sentenced to 60 years for first degree murder and 30 years for attempted first degree murder.  The sentences were to run consecutively to each other and to the defendant's Wisconsin sentence.  This appeal followed.

ANALYSIS

I. Prior Consistent Statement

     The defendant contends, first, that he was deprived of a fair trial by the prosecutor's use of Mr. Parker's prior consistent statement.

A. Standard of Review

    
 Although a reviewing court might have ruled differently, the trial court's evidentiary ruling may not be reversed absent an abuse of discretion.  
People v. Hall
, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000).  An abuse of discretion will only be found where the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court.  
Hall
, 195 Ill. 2d at 20, 743 N.E.2d at 138.

B. Discussion

     It is well established that proof of a prior consistent statement made by a witness is hearsay and therefore inadmissible to bolster a witness's trial testimony.  
People v. West
, 263 Ill. App. 3d 1041, 1047, 636 N.E.2d 948, 953 (1994).  
The improper bolstering of a witness's credibility through the use of prior consistent statements "'preys on the human failing of placing belief on that which is most often repeated.' [Citation.]"  
West
, 263 Ill. App. 3d at 1047, 636 N.E.2d at 953. Prior consistent statements may not be admitted merely because a witness has been discredited or impeached.  
People v. Mullen
, 313 Ill. App. 3d 718, 730, 730 N.E.2d 545, 555 (2000).  

     Two exceptions to the above rule exist: prior consistent statements are properly admitted (1) to rebut a charge that the witness is motivated to testify falsely or (2) to rebut a charge that the testimony is of recent fabrication.  
Mullen
, 313 Ill. App. 3d at 730, 730 N.E.2d at 555.  Charges of recent fabrication and charges of a motive to testify falsely are separate exceptions to the general rule which prohibits proof of prior consistent statements.  
Mullen
, 313 Ill. App. 3d at 730, 730 N.E.2d at 555.  The party seeking to introduce the prior consistent statement has the burden of establishing that the statement predates the alleged recent fabrication or predates the existence of the motive to testify falsely.  
Mullen
, 313 Ill. App. 3d at 730, 730 N.E.2d at 555-56.  

     The defendant argues that the prosecutor should not have been allowed to use Mr. Parker's November 10, 1996, statement because Mr. Parker's motive to testify falsely existed prior to his November 10, 1996, statement.  The defendant points out that, following his arrest on November 9, 1996, Mr. Parker denied any involvement in the shootings of Ms. Redeaux and Mr. Hubbard.  The defendant further points out that Mr. Parker's November 10, 1996, statement naming the defendant as the shooter came only after Mr. Parker had been handcuffed to the wall at the police station and deprived of restroom and telephone usage for an extended period of time.  Therefore, Mr. Parker was prompted  to lie about the shooter's identity in order to alleviate his treatment by the police and thus his motive to lie was present prior to his making the November 10, 1996, statement.

     However, it is the recent charge of fabrication exception that applies in this case.  

     In 
People v. Antczak
, 251 Ill. App. 3d 709, 622 N.E.2d 818 (1993), N.H., a witness, testified that the defendant indicated his involvement in the burglary of N.H.'s mother's boyfriend's apartment.  On cross-examination of N.H., defense counsel elicited that, until right before the trial, N.H. had not mentioned her conversation with the defendant until their relationship had been broken off and then only to her mother. The State was permitted to introduce the testimony of a former assistant State's Attorney who testified that, 11 months before the trial, N.H. had related her conversation with the defendant to him.  The defendant appealed his conviction, arguing, 
inter
 
alia
, that the use of the N.H.'s prior consistent statement was error.

     After discussing the case law on the use of prior consistent statements, the reviewing court adopted the view that treated charges of recent fabrication and charges of a motive to testify falsely as separate exceptions.  
Antczak
, 251 Ill. App. 3d at 715-17, 622 N.E.2d at 822-23.  The court then stated as follows:

     "In the case at bar, defendant essentially attacked N.H.'s credibility on two distinct bases.  First defendant suggested that N.H.'s testimony was the product of her hostility toward defendant for breaking off their relationship.  However, as noted above, defendant also sought to persuade the jury that N.H.'s testimony was suspect because she waited essentially until the eve of trial to come forward.  This theory of impeachment could be viewed as independently viable without proof of any particular motive.  The jury could have rejected the charge that well over a year after their breakup N.H. was still angry enough at defendant to commit perjury.  But even if the jury had rejected this alleged motive, it might still have doubted N.H.'s testimony simply because N.H. had not come forward earlier.  We believe that N.H.'s statements to [the former assistant State's Attorney] were admissible to rehabilitate N.H. against this general charge of recent fabrication."  
Antczak
, 251 Ill. App. 3d at 717, 622 N.E.2d at 823.
(footnote: 3)
     In his cross-examination of Mr. Parker, defense counsel touched on the circumstances surrounding Mr. Parker's initial denial of any involvement in the shooting and his subsequent naming of the defendant as the shooter.  However, defense counsel extensively cross-examined Mr. Parker as to his plea agreement with the State.  There is no dispute that the plea agreement was entered into subsequent to Mr. Parker's November 10, 1996, statement.  

     Thus, regardless of any motive to lie, the defendant's November 10, 1996, statement was admissible to rehabilitate Mr. Parker's testimony that the defendant was the shooter against any charge that he fabricated his story in exchange for the plea agreement.  

     We conclude that the trial court did not abuse its discretion in admitting Mr. Parker's prior consistent statement.

II. Closing Argument

     The defendant contends that the prosecutor improperly bolstered Mr. Parker's credibility in his closing argument.

A. Standard of Review

     A prosecutor has great latitude in closing argument, and the trial court's determination about the propriety of the remarks should be followed absent a clear abuse of discretion.  
People v. Taylor
, 244 Ill. App. 3d 806, 818, 612 N.E.2d 943, 951 (1993).  

B. Discussion

     The defendant concedes that he failed to preserve this issue for review, but urges this court to review the issue pursuant to the plain error doctrine found in Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).  

     However, before invoking the plain error exception to waiver, we must determine, first, if any error occurred.  
People v. Chapman
, 194 Ill. 2d 186, 226, 743 N.E.2d 48, 72 (2000).

     The defendant complains of the prosecutor's statements in closing argument that Mr. Parker was the defendant's "dupe," that Mr. Parker had no idea of what was going on and that, after Mr. Parker saw the defendant with a gun and heard the first shot, he had "no options."  

     The defendant argues that the prosecutor's statements were not proper inferences from the testimony.  The defendant maintains that the prosecutor's portrayal of Mr. Parker as a victim was inaccurate.  The defendant points out that Mr. Parker did not come forward voluntarily and that it was only after he was arrested that he implicated the defendant.  The defendant further notes that Mr. Parker pleaded guilty to conspiracy to commit first degree murder.  Finally, the defendant maintains that the prosecutor's argument prejudiced the defendant because the jury would likely disregard the accomplice instruction to view Mr. Parker's testimony with caution.

     The credibility of a witness is a proper subject for closing argument if it is based on the evidence or inferences drawn from it.  
People v. Hudson
, 157 Ill. 2d 401, 445, 626 N.E.2d 161, 180 (1993).  It is improper for a prosecutor to argue assumptions or facts not based upon the evidence in the record.  
People v. Kliner
, 185 Ill. 2d 81, 151, 705 N.E.2d 850, 885 (1998).  

     In this case, the prosecutor's argument was based on Mr. Parker's testimony.  There was no evidence that Mr. Parker had any awareness of the defendant's ultimate intentions regarding Ms. Redeaux and Mr. Hubbard until he saw the gun pressed against Ms. Redeaux.  He merely drove where Mr. Summers or the defendant told him to drive.  A proper inference from the evidence was that, once the gun was revealed, Mr. Parker was deprived of any viable options which might have aided both himself and the victims.  

     Initially, Mr. Parker was charged with first degree murder. Compare 
Mullen
, 313 Ill. App. 3d at 726, 730 N.E.2d at 552-53 (Mr. Mullen properly found guilty of first degree murder under accountability theory where, as the victim was beaten, the defendant did not offer help, did not discourage or disapprove of the crime, came and left with the group that actively participated in the beating and did not report the crime).  However, Mr. Parker was ultimately allowed to plead guilty to a lesser offense.  Unlike the evidence in 
Mullen
, which showed that Mr. Mullen shared the criminal intent of the group that killed the victim, the evidence in this case did not show Mr. Parker's participation in the defendant's ultimate decision to shoot Ms. Redeaux and Mr. Hubbard.  Mr. Parker's choice not to act on behalf of the victims, while perhaps not a noble one, was dictated by his fear for his own safety.

     As the prosecutor's statements in closing argument were based upon the evidence and the proper inferences from the evidence in the record, they were not error.  

III. Sentencing

     The defendant contends that his sentence is improper because it exceeds the sum of the maximum terms authorized under section 5-8-4(c)(2) of the Code (730 ILCS 5/5-8-4(c)(2) (West 1996)).  

A. Standard of Review

     Issues as to statutory construction are reviewed 
de
 
novo
.  
Revolution Portfolio, LLC v. Beale
, 332 Ill. App. 3d 595, 600, 774 N.E.2d 14, 19 (2002).  

B. Discussion

     Section 5-8-4(c)(2) of the Code provides in pertinent part as follows:

     "For sentences imposed under the law in effect on or after February 1, 1978, the aggregate of consecutive sentences shall not exceed the sum of the maximum terms authorized under Section 5-8-2 for the 2 most serious felonies involved."  730 ILCS 5/5-8-4(c)(2) (West 1996).

    Section 5-8-2 of the Code provides for the imposition of extended term sentences and states in pertinent part as follows:

     "(1) for first degree murder, a term shall be not less than 60 years and not more than 100 years;

      (2) for a Class X felony, a term shall be not less than 30 years and not more than 60 years[.]"  730 ILCS 5/5-8-2(a)(1), (a)(2) (West 1996).

     In this case, the trial court sentenced the defendant to 60 years for the first degree murder, its own class of felony, of Ms. Redeaux and 30 years for the attempted first degree murder, a Class X offense, of Mr. Hubbard.  The trial court ordered that the sentences be served consecutively for a total of 90 years' imprisonment.  

     However, the defendant contends that his sentence is improper because the trial court ordered the 90-year sentence in this case to be served consecutively to an 85-year sentence imposed on the defendant by the Wisconsin court.  The State argues that a reading of section 5-8-4(c)(2) of the Code makes it clear that the legislature did not intend out-of-state sentences to apply to Illinois statute.  

     It is well settled that the primary objective of a court in construing the meaning of a statute is to ascertain and give effect to the intention of the legislature.  
In re Detention of Lieberman
, 201 Ill. 2d 300, 307, 776 N.E.2d 218, 223 (2002).  The statutory language is to be given its plain, ordinary and popularly understood meaning, and a court is to afford the statutory language the fullest, rather than narrowest, possible meaning to which it is susceptible.  
Lieberman
, 201 Ill. 2d at 308, 776 N.E.2d at 223.  Where the language of a statute is clear and unambiguous, it will be given effect without resort to other aids for construction.  
People v. Woodard
, 175 Ill. 2d 435, 443-444, 677 N.E.2d 935, 939 (1997).  Criminal or penal statutes are to be strictly construed in favor of an accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute.  
Woodard
, 175 Ill. App. 3d at 444, 677 N.E.2d at 939.  

     The purpose of section 5-8-4(c)(2) is to limit the total length of consecutive sentences imposed on the defendant, while still punishing the defendant in relationship to the severity of the crimes.  
People v. Tucker
, 167 Ill. 2d 431, 436, 657 N.E.2d 1009, 1012 (1995).

     Contrary to the State's argument, nothing in section 5-8-4(c)(2) limits the application of the aggregate maximum to consecutive sentences imposed for convictions in Illinois.  Moreover, the State does not address 
People v Brown
, 275 Ill. App. 3d 1105, 657 N.E.2d 642 (1995), relied on by the defendant, which resolved this issue.

     In 
Brown
, the defendant contended that the trial court could not order his 47-year sentence to be served consecutively to his Indiana 90-year term sentence because it violated section 5-8-4(c)(2).  Agreeing with the defendant, the reviewing court stated as follows:

     "In light of our supreme court's recent decision construing section 5-8-4(c)(2) in 
People v. Tucker
 (1995), 167 Ill. 2d 431, we agree that defendant's sentence must be modified.  In 
Tucker
 the court wrote:

'As the statute [section 5-8-4(a) (730 ILCS 5/5-8-4(a) (West 1992))]
(footnote: 4) provides for the imposition of a consecutive sentence on a defendant already subject to a sentence, both sentences are "involved" under the statutory scheme.  Thus, the limitations on consecutive sentences articulated in section 5-8-4(c)(2) logically applies regardless of whether the consecutive sentences arise from separate incidents.'  (167 Ill. 2d at 436.)

We must therefore consider all sentences defendant is serving in considering whether his current sentence exceeds the limitations set by section 5-8-4(c)(2)."  
Brown
, 275 Ill. App. 3d at 1116, 657 N.E.2d at 650.

     Pursuant to 
Brown
, the defendant's sentence, including his Wisconsin sentence, violates section 5-8-4(c)(2) if it exceeds the sum of the maximum terms under section 5-8-2.  Under section 5-8-2, the maximum allowable terms are 100 years for first degree murder, its own class of felony, and 60 years for attempted first degree murder, a Class X felony, for a total of 160 years.  Therefore, the defendant's 175-year sentence exceeds the allowable term-of-years sentence by 15 years.

     However, the defendant maintains that maximum aggregate sentence allowable under section 5-8-4(c)(2) is 130 years.  He argues that, under section 5-8-2, a judge may impose an extended-term sentence only for the class of the most serious offense of which the offender was convicted.  730 ILCS 5/5-8-4(a) (West 1996). The defendant reasons that, under section 5-8-2, the trial court was only authorized to impose an extended-term sentence of 100 years for first degree murder, the most serious of the charged offenses, and a nonextended term of 30 years for attempted murder.  We disagree.

     Under section 5-8-4(c)(2), "the aggregate of [the defendant's] consecutive sentences may not exceed the sum of the maximum terms authorized under Section 5-8-2 
for the 2 most serious felonies involved
."  (Emphasis added.)  730 ILCS 5/5-8-4(c)(2) (West 1996).  

     Under section 5-8-2, an extended-term sentence may be imposed only for the most serious class of offense of which the defendant was convicted.  
People v. Terry
, 183 Ill. 2d 298, 302, 700 N.E.2d 992, 994 (1998); 
People v. Jordan
, 103 Ill. 2d 192, 204-06, 469 N.E.2d 569, 575 (1984).  Under section 5-8-2, therefore, the defendant could only receive an extended-term sentence for his conviction for first degree murder.  

     Because all provisions of a statutory enactment are viewed as a whole, words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute.  
Lieberman
, 201 Ill. 2d at 308, 676 N.E.2d at 223.  Each word, clause and sentence of the statute, if possible must be given reasonable meaning and not rendered superfluous.  
Lieberman
, 201 Ill. 2d at 308, 676 N.E.2d at 223.

     The defendant's reading of section 5-8-4(c)(2) would require the phrase, "for the 2 most serious felonies" be read "for the 2 most serious felonies of the same class."  However, in enacting section 5-8-4(c)(2) the legislature did not require that the two most serious felonies be of the same class.  If the legislature had wanted the aggregate maximum of the consecutive sentences to depend on whether the trial court could impose an extended-term sentence on each of the offenses committed, it would have limited the language to "shall not exceed the maximum terms authorized under Section 5-8-2."  

     The unambiguous language of section 5-8-4(c)(2) authorized the trial court to impose a maximum sentence of 160 years in this case.  This is not a case where, in order to fulfill the legislative purpose, we need to modify, alter or supply words to a statute to "'"obviate any repugnancy or inconsistency with the legislative intention."' [Citations.]"  
People v. Smith
, 307 Ill. App. 3d 414, 418, 718 N.E.2d 640, 643 (1999).  The legislature intended to limit, not eliminate, lengthy consecutive sentences to be served by defendants.  

     Our reading of section 5-8-4(c)(2) finds additional support in 
Brown
.  After determining that Mr. Brown's sentence exceeded the limitation set forth in section 5-8-4(c)(2), the court stated as follows:

     "The record shows defendant's two most serious offenses are the aggravated criminal sexual assault committed in Illinois and a Class A child molestation offense committed in Indiana.  Both offenses correspond to Class X offenses under section 5-8-2. [Citation.]  Only first-degree murder is a more serious crime under our extended-term sentencing scheme.  A Class X offense carries a maximum term of 60 years. [Citation.]  Thus, the maximum sentence defendant can receive under section 5-8-4(c)(2) in Illinois is the sum of two Class X offenses, or 120 years."  
Brown
, 275 Ill. App. 3d at 1116, 687 N.E.2d at 650.

     In the present case, the defendant's two most serious felonies were the Illinois first degree murder and attempted first degree murder charges.
(footnote: 5)  Under section 5-8-2, first degree murder carries a maximum extended-term sentence of 100 years, and attempted murder carries a maximum extended-term sentence of 60 years.  Therefore, the maximum sentence the defendant could receive under section 5-8-4(c)(2) is 160 years.  

     As the defendant's sentence exceeds the maximum allowed by under section 5-8-4(c)(2) by 15 years, the defendant's 60-year sentence for murder must be modified to 45 years.

     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified.

     Affirmed as modified.

     HOFFMAN, P.J., and KARNEZIS, J., concur.

     

      

FOOTNOTES
1:
The defendant's Wisconsin sentence is apparently being served concurrently with a 365-month sentence imposed by the federal court in an unrelated case.

2:
Following the commission of the offenses in this case, the legislature amended section 5-8-4(c)(2) to provide that the maximum term limitation contained in that section does not apply "for offenses that were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective."  Pub. Act 90-128 §5, eff. July 22, 1997 (amending 730 ILCS 5/5-8-4(c)(2) (West 1996)).  Both the State and the defendant agree that the 1997 amendment is not applicable to this case.

3:
In 
People v. Grisset
, 288 Ill. App. 3d 620, 681 N.E.2d 1010 (1997), this district refused to follow the Second District's prior consistent statement analysis in 
Antczak
.  See also 
People v. Jones
, 293 Ill. App. 3d 119, 687 N.E.2d 1010 (1997).  However, more recently, 
Antczak
 was cited with approval by this district in 
Mullen
.

4:
Section 5-8-4(a) provides, in pertinent part, that when "a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or consecutively as determined by the court."  730 ILCS 5/5-8-4(a) (West 1996).

5:
The defendant's presentencing report lists the offenses in Wisconsin as attempted murder and burglary while armed.  However, at the sentencing hearing, the prosecutor stated that the defendant had been sentenced to 85 years for attempted murder and first degree criminal sexual assault in Wisconsin.